[Civ. No. 1936. Fifth Dist. Jan. 14, 1975.]

JULIANA UCCELLO, a Minor, etc., Plaintiff and Appellant, v.
REX A. LAUDENSLAYER, Defendant and Respondent.

## COUNSEL

Damrell & Damrell and Duane L. Nelson for Plaintiff and Appellant.

Price, Martin & Crabtree and Walter J. Schmidt for Defendant and Respondent.

## OPINION

**FRANSON, J.**—This appeal presents a question of first impression: Under what circumstances does a landlord owe a duty of care to his tenant's invitees to prevent injury from an attack by a vicious dog kept by the tenant on the leased premises? We hold that a duty of care arises when the landlord has actual knowledge of the presence of the dangerous animal and when he has the right to remove the animal by retaking possession of the premises.

A jury trial commenced on appellant's complaint for personal injuries against defendant Cappell and respondent Laudenslayer. At the conclusion of appellant's opening statement, the trial court granted respondent's motion for a nonsuit.

We glean the following facts from the record on appeal:[1] In July of 1971, appellant, five years old, resided with her father and mother at 631 Josilane, Modesto, California. At 630 Josilane, across the street, Anthony Cappell lived with his family in a home rented from respondent. Respondent, the sole proprietor of a real estate agency operated as Rex Realty, owned and rented several other residential premises within the immediate area of the Cappell rental. Until November 1970, respondent lived on the same block, across the street and about three houses down from the Cappell house.

---

[1]The record on appeal contains, in addition to the transcript of the opening statement, allegations of fact contained in affidavits filed in support of and in opposition to an earlier motion for summary judgment filed by respondent. In keeping with the liberality which must be exercised in favor of the appellant in construing the opening statement and in light of respondent's failure to state precisely the specific defect which rendered appellant's opening statement insufficient (see 4 Witkin, Cal. Procedure (2d ed.) Trial, § 361, pp. 3158-3159), we assume that appellant could have cured the defect by reciting the facts set forth in the affidavits pertaining to the summary judgment, most of which are uncontradicted and apparently were considered by the trial judge in granting the motion for nonsuit. However, except as to the facts recited in the opinion, respondent's motion to strike portions of appellant's "statement of facts" as set forth in her opening brief is granted.

The Cappell family owned a large German Shepherd dog which was kept as a watchdog. The dog was normally kept penned in the fenced backyard of the rental, but it was sometimes allowed inside the house.

On July 7, 1971, appellant entered the home at 630 Josilane to play with Erna Cappell, the daughter of the tenants. While the two girls were playing in the kitchen area, the dog entered the house and attacked appellant, causing her serious injuries.

The Cappell family had moved into the respondent's rental in July of 1970. They had entered into a month-to-month tenancy agreement with respondent. Specific permission was given for the dog to be kept on the premises, and a handwritten addition to the agreement provided that any damage to the premises by the dog would be paid for by the tenant. The agreement provided that the tenancy could be terminated by either party upon two weeks' notice in writing.

Respondent visited the 630 Josilane premises shortly after the Cappells arrived and on at least two other occasions prior to the incident of July 7, 1971; each time he observed the German Shepherd dog. After moving from Josilane Street in November 1970, respondent frequently drove by the Cappell residence for the purpose of visually inspecting the premises. On several of these occasions he saw the dog in the front yard in the company of Mr. Cappell.

Shortly after moving into the premises, Cappell placed "Beware of Dog" signs on the front and back fences of the yard. The signs were replaced on numerous occasions and remained on the fences until the Cappell's departure in November 1971. Meter readers for the water district and power company were warned about a "bad dog" and to take precautions before entering the Cappell premises.

During August or September of 1970 (and while respondent still lived in the neighborhood) the dog attacked and bit one Frank Shaffer, who lived across the street from the 630 Josilane premises. During the July Fourth weekend of 1971, the dog attacked and bit a child while the Cappells were on vacation.

Immediately following the July 7, 1971, attack on appellant, at least 30 neighbors signed a petition demanding that the dog be removed from the neighborhood; it was ignored by the Cappells. About November 11, 1971, the dog attacked Erna Cappell, the daughter of Anthony J.

Cappell, resulting in hospitalization of the girl. The dog was euthanized around November 29, 1971.[2]

A grammar school is located approximately two blocks from the 630 Josilane premises. Prior to the dog attack of July 8, 1971, appellant and other neighborhood children frequently played in the yards of 630 Josilane and neighboring premises. Appellant was invited by the Cappells onto the premises on frequent occasions and visited the Cappell residence to play with the Cappell girls on an almost daily basis during the summer.

In the complaint for personal injuries it was alleged that respondent "knew or in the exercise of ordinary care should have known of the dangerous condition" on the Cappell premises, that respondent knew, or should have known, "that children of plaintiff's age would be" and were attracted to the premises by the dog, that respondent negligently owned, operated, maintained and controlled said premises in that he was aware of the dangerous condition, yet allowed the dog to remain on the premises, and that he was also negligent in that he failed to discover the existence of the dog and the dangerous condition.

## REVIEW OF NONSUIT AFTER OPENING STATEMENT

■ A judgment of nonsuit should be entered only where there is no substantial conflict in the evidence and only when it can be said, as a matter of law, that no other reasonable conclusion is legally deducible from the evidence. The trial court must give plaintiff's evidence all value to which it is entitled, indulging in every legitimate inference which may be drawn from it and it must disregard all conflicting evidence. (4 Witkin, Cal. Procedure (2d ed.) Trial, § 353, pp. 3152-3153.)

Moreover, the granting of a nonsuit after an opening statement is a disfavored practice; it will be upheld only when it is clear that counsel has undertaken to state all of the facts which he expects to prove and it is plainly evident that those facts will not constitute a cause of action. (*Bias v. Reed,* 169 Cal. 33, 37 [145 P. 516]; *Paul v. Layne & Bowler Corp.,* 9

[2]While the events which transpired after the July 7, 1971, attack on appellant are irrelevant, at least to the issue of respondent's knowledge of the dog's vicious nature, they nonetheless forcefully demonstrate that a pet owner often is incapable of objectively evaluating his animal's dangerous propensities. This is a factor which must be considered in deciding whether public policy requires, under carefully limited circumstances, the imposition of a duty of care on someone other than the pet owner, in this case the owner of the premises where the animal is kept, so as to prevent future harm. (See *Rowland v. Christian,* 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

Cal.2d 561, 564 [71 P.2d 817]; *Mendez* v. *Pacific Gas & Elec. Co.,* 115 Cal.App.2d 192, 196 [251 P.2d 773]; 4 Witkin, *supra,* § 360, p. 3158.)

█ While appellant's counsel did not expressly state that respondent knew of the viciousness of the dog, a reasonable inference of such knowledge may be drawn from the opening statement. Accordingly, for the purpose of reviewing the propriety of the nonsuit, we will assume that a question of fact was presented as to whether respondent had such knowledge.

### EXISTENCE OF A DUTY OF CARE

Civil Code section 1714 provides in pertinent part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, . . ."

In *Rowland* v. *Christian, supra,* 69 Cal.2d 108, the Supreme Court applied this statute in holding a tenant liable to her guest for injuries caused by a dangerous condition on the property. While *Rowland* did not deal with the liability of a landowner who is not in possession of his property, the court nonetheless observed: "Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, *no such exception should be made unless clearly supported by public policy.* [Citations.]" (Italics added. 69 Cal.2d at p. 112; see also *Brennan* v. *Cockrell Investments, Inc.,* 35 Cal.App.3d 796, 800 [111 Cal.Rptr. 122].)

Historically, the public policy of this state generally has precluded a landlord's liability for injuries to his tenant or his tenant's invitees from a dangerous condition on the premises which comes into existence after the tenant has taken possession. This is true even though by the exercise of reasonable diligence the landlord might have discovered the condition. (*Schwartz* v. *McGraw-Edison Co.,* 14 Cal.App.3d 767 [92 Cal.Rptr. 776] 30 Cal.Jur.2d, Landlord and Tenant, § 159, pp. 307-309; Rest., Torts, § 355 et seq.; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 615, pp. 2895-2896.)

The rationale for this rule has been that property law regards a lease as equivalent to a sale of the land for the term of the lease. (See com. (a) to Rest., Torts, § 355.) As stated by Prosser: "In the absence of agreement to the contrary, the lessor surrenders both possession and control of the land to the lessee, retaining only a reversionary interest; and he has no right even to enter without the permission of the lessee. Consequently, it is the general rule that he is under no obligation to anyone to look after the premises or keep them in repair, and is not responsible, either to persons injured on the land or to those outside of it, for conditions which develop or are created by the tenant after possession has been transferred. Neither is he responsible, in general, for the activities which the tenant carries on upon the land after such transfer, even when they create a nuisance." (Prosser, Law of Torts (4th ed.) p. 400.)

To this general rule of nonliability, the law has developed a number of exceptions, such as where the landlord covenants or volunteers to repair a defective condition on the premises (*Scholey* v. *Steele,* 59 Cal.App.2d 402, 405 [138 P.2d 733]; *Minolletti* v. *Sabini,* 27 Cal.App.3d 321, 324 [103 Cal.Rptr. 528]), where the landlord has actual knowledge of defects which are unknown and not apparent to the tenant and he fails to disclose them to the tenant (*Shotwell* v. *Bloom,* 60 Cal.App.2d 303, 309-310 [140 P.2d 728]), where there is a nuisance existing on the property at the time the lease is made or renewed (*Burroughs* v. *Ben's Auto Park, Inc.,* 27 Cal.2d 449, 453-454 [164 P.2d 897]), when a safety law has been violated (*Grant* v. *Hipscher,* 257 Cal.App.2d 375, 382-383 [64 Cal.Rptr. 892]), or where the injury occurs on a part of the premises over which the landlord retains control, such as common hallways, stairs, elevators or roof (*Johnston* v. *De La Guerra Properties, Inc.,* 28 Cal.2d 394, 400 [170 P.2d 5]).

A common element in these exceptions is that either at or after the time possession is given to the tenant the landlord retains or acquires a recognizable degree of control over the dangerous condition with a concomitant right and power to obviate the condition and prevent the injury. In these situations, the law imposes on the landlord a duty to use ordinary care to eliminate the condition with resulting liability for injuries caused by his failure so to act. (Cf. *Brennan* v. *Cockrell Investments, Inc.,* 35 Cal.App.3d 796 [111 Cal.Rptr. 122].)

While we have been unable to find a California case dealing with the precise question of whether a landlord owes a duty to his tenant's

invitees to prevent injury from a vicious animal kept on the premises with the landlord's consent,[3] we believe public policy requires that a landlord who has knowledge of a dangerous animal should be held to owe a duty of care only when he has the right to prevent the presence of the animal on the premises. Simply put, a landlord should not be held liable for injuries from conditions over which he has no control.

On the other hand, if a landlord has such a degree of control over the premises that it fairly may be concluded that he can obviate the presence of the dangerous animal and he has knowledge thereof, an enlightened public policy requires the imposition of a duty of ordinary care. To permit a landlord in such a situation to sit idly by in the face of the known danger to others must be deemed to be socially and legally unacceptable.

Respondent rented to Cappell under a month-to-month tenancy agreement terminable upon two weeks' notice. Manifestly, upon notice, respondent could have exercised his right to terminate the tenancy and re-enter into possession of the premises unless Cappell got rid of the dog. It reasonably may be said that by virtue of the right of termination, respondent had sufficient control over the premises so as to bring the case within an exception to the general rule of nonliability.

The imposition of a duty of care based upon respondent's right to terminate the tenancy is consistent with the cases which hold that if at the time a lease is made or *renewed,* the use of the premises by the tenant creates a nuisance and the landlord knows of this, he is liable to third

---

[3]Three New York cases are of interest. In *Denagy* v. *Doscher* (1963) 40 Misc.2d 643 [243 N.Y.S.2d 575], the defendant Doscher leased premises to a co-defendant lessee knowing that the lessee kept a vicious dog on the premises. The dog attacked and injured the minor plaintiff. There was no allegation that the defendant lessor had any control over the property where the dog was kept. In granting a motion to dismiss the court stated: "The rule of liability that permits recovery against the owner of a dog who knows of the vicious propensities of the dog has not been extended to a landlord who leased the property to the owner of the dog." In *Simpson* v. *Griggs* (1890) 58 N.Y.(Hun.) 393 [12 N.Y.S. 162], the defendant farmer employed one W as a hired man and provided him with a residence to which W brought a dog which later bit the plaintiff. The court reversed a judgment against the farmer, emphasizing that the farmer knew nothing of the dog's viciousness and had no power over him. However, in *Siegel* v. *1536-46 St. John's Place Corporation* (1945) 184 Misc. 1053 [57 N.Y.S.2d 473], where the landlord knew of the vicious disposition of a dog owned by the apartment house superintendent who occupied an apartment as a tenant, and another tenant's child was bitten on a common stairway in the house, the landowner was held liable on a theory of negligence resulting from its failure to exercise reasonable care in keeping the premises in a safe condition. The court noted that the landlord had control of the premises with power to expel the dog and its owner.

persons injured thereby. (See *Dennis* v. *City of Orange,* 110 Cal.App. 16 [293 P. 865]; *Burroughs* v. *Ben's Auto Park, Inc., supra,* 27 Cal.2d 449; 3 Witkin, Summary of Cal. Law (8th ed.) Real Property, § 458, p. 2141; see also Rest., Torts, § 837; Rest.2d Torts, §§ 379 and 379A.)

In *Dennis* v. *City of Orange, supra,* 110 Cal.App. 16, the City of Orange leased land, including a creek bed, to a tenant who excavated gravel from the creek bed. The tenant created a nuisance by excavating in such a way as to cause plaintiff's neighboring land to erode. The suit was based on the allegation that the city re-let the property without causing the nuisance to be abated. The court stated: "It naturally follows that when a landlord renews a lease or re-leases the premises to the same tenant, the very making of a new lease shows that at that time the landlord has a right of entry to the premises, and logically, having a right to enter and remedy the defect, if he re-leases with the dangerous conditions existing, the usual rule then applies that he is liable for injuries resulting from a condition amounting to a nuisance, which exists at the time the premises are demised. . . 'The ground of the defendant's liability for the nuisance is that it existed at a time when he had the opportunity or power to abate or remove it and failed to do so. When the lease was executed and the term was created, the finding of the jury is that the defect existed. It was then his duty before renewing the lease to have abated the nuisance. It was within his power to do so, and his failure to exercise that power imposes liability.' " (110 Cal.App. 23-24.)

■ Moreover, a recognition of a landlord's duty of care in the situation before us is consistent with the principles articulated in *Rowland* v. *Christian, supra.* There it is stated that the considerations that must be balanced in deciding whether public policy commands or negates the imposition of liability include: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian, supra* (1968) 69 Cal.2d 108, 113.) (See also *Raymond* v. *Paradise Unified School Dist.,* 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847].)

Assuming respondent's knowledge of the vicious dog, the foreseeability of harm to the appellant was obvious; it was simply a question of time

before someone invited onto the premises would be attacked by the dog. The failure of respondent to order his tenant to cease harboring the dog under pain of having the tenancy terminated, is closely connected with the injuries suffered; if Cappell had not removed the dog and respondent had ousted him from possession the danger would have ended. There is a moral blame attached to a landlord's conduct under these circumstances; he cannot be permitted to knowingly stand aside where it is shown that he has the power to remove the animal from the premises without incurring a liability for his failure to act. We find no extensive burden on a landlord in requiring him to act under the circumstances; the risk of the loss of a tenant for his premises must yield to the obvious danger to third parties. Finally, the availability, cost and prevalence of insurance for the risk involved does not preclude the imposition of liability; a landlord readily can obtain insurance to protect himself from liability to third parties for injuries suffered on the premises or he can require, as a condition of renting the premises, that his tenant obtain such insurance.

It should be emphasized that a duty of care may not be imposed on a landlord without proof that he knew of the dog and its dangerous propensities. Because the harboring of pets is such an important part of our way of life and because the exclusive possession of rented premises normally is vested in the tenant, we believe that *actual* knowledge and not mere constructive knowledge is required.[4] For this reason we hold that a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal; only when the landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise.

Because we have assumed that respondent knew of the vicious propensities of the Cappell dog and because he could have abated the harboring of the dog on the premises by terminating the tenancy upon two weeks' notice, appellant stated a cognizable theory of liability

---

[4] We point out, however, that a defendant's actual knowledge may be shown, not only by direct evidence, but also by circumstantial evidence. Hence, his denial of such knowledge will not, per se, prevent liability. (Cf. *Fleharty* v. *Boltzen,* 137 Cal.App.2d 187 [290 P.2d 311]; *Desherow* v. *Rhodes,* 1 Cal.App.3d 733, 747 [82 Cal.Rptr. 138]; 35 Cal.Jur.2d, Negligence, § 255, pp. 799-800.) However, actual knowledge can be inferred from the circumstances only if, in the light of the evidence, such inference is not based on speculation or conjecture. Only where the circumstances are such that the defendant "must have known" and not "should have known" will an inference of actual knowledge be permitted. (Cf. *Young* v. *Carlson,* 128 Cal.App.2d 743, 747-750 [276 P.2d 23].)

against respondent under Civil Code section 1714 and it was error to enter the judgment of nonsuit.

The judgment is reversed.

Brown (G.A.), P. J., and Gargano, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 12, 1975.