[No. 7530-6-I.   Division One.   June 16, 1980.]

BERTHA SHAFER, *Appellant*, v. PETER BEYERS, ET AL, *Defendants*, HUGO ACKMANN, ET AL, *Respondents*.

*George R. Stege III, Thomas W. Bingham,* and *Benson, Chadwick, Stege & Wines,* for appellant.

*Robert Ward Freedman* and *Michael R. Alfieri,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

The plaintiff, Bertha Shafer, appeals from a summary judgment dismissing her personal injury action against the owners of premises on which the dog that injured her was kept.

The following material facts established by the affidavits and depositions in the record are not controverted.

The plaintiff was walking on the public sidewalk past a duplex in Seattle when a male Doberman pinscher named Nojo, which was chained in the front yard by a chain long enough for it to reach the sidewalk, knocked the plaintiff down and bit her causing the injuries and damages which are the subjects of this action.

The duplex was owned by Mr. and Mrs. Ackmann who do not live in Seattle. The lower portion of the duplex was rented at the time to Michael Palmer under a written rental agreement. The rental agreement provided in part: the tenancy was a month–to–month tenancy beginning the first of each month; rent was payable in advance; the tenant was not to sublet the apartment without the written consent of the owners; and the tenant would not keep any dog or other animal or pet without the owners' permission.

Sometime after the duplex unit was initially rented to Michael Palmer and his brother, the brother moved out and Mr. and Mrs. Peter Beyers moved in under a temporary arrangement with Michael Palmer. Mr. and Mrs. Beyers brought their two dogs with them, a female Dober-

man pinscher named Tausha and a toy poodle. These two dogs were not involved in the occurrence in any way. Between 1 and 3 weeks before the injury to the plaintiff occurred, the Beyers also acquired a male Doberman pinscher named Nojo from Richard Viau. It is Nojo that caused the plaintiff's injuries.

There are a number of other issues which are controverted. These include: when it was that the owners learned about the subletting to Mr. and Mrs. Beyers; whether Nojo was owned by the Beyers or merely being kept by them for Mr. Viau; whether the owners had ordered Mr. Palmer or the Beyers to vacate and/or get rid of the dogs prior to the event in question and, if so, when and in what terms did they so express themselves; and when it was that the landlords learned about the other two dogs, Tausha and the poodle, being on the premises and what they did about it. We do not, however, consider these other facts to be material to the issues on which our disposition of this case turns.

When the plaintiff filed her personal injury action, she named as parties defendant and served all of the foregoing persons; namely, Mr. and Mrs. Ackmann, Michael Palmer, Mr. and Mrs. Beyers and Richard Viau. All parties were represented by counsel at the taking of the depositions in this case on which the parties hereto rely.

The motion of Mr. and Mrs. Ackmann (the property owners) for a summary judgment of dismissal was granted by the trial court and the plaintiff appeals therefrom. None of the other named defendants are parties to this appeal.

One ultimate issue is presented.

## ISSUES

Are the owners of rental property (who do not live on the rented premises) liable for injuries sustained by a pedestrian while passing by the premises on a public sidewalk, which injuries were caused by a dog kept on the premises by a subtenant of the tenant to whom the premises were rented?

## DECISION

CONCLUSION. Based on our review of the law applicable to dog bite cases, and the undisputed material facts presented in this case, we conclude that the trial court did not err in granting a summary judgment dismissing the plaintiff's action against the owners of the premises where the dog in question was being kept by a subtenant at the time the injuries were sustained by the plaintiff.

The plaintiff pleads and argues an array of legal bases on which it is claimed there is a right to recover from the property owners. We will discuss the pertinent theories seriatim.

■ RCW 16.08.040 imposes strict liability for dog bites sustained by persons in public and certain other places regardless of whether the dog is known to be vicious before the biting. That statute by its terms, however, applies only to "[t]he owner" of the dog. RCW 16.08.040. Since the property owners are not the owners of the dog in question, liability cannot be imposed on them on that basis.

■ A criminal statute, RCW 9.08.010, prohibits allowing any animal known to have vicious or dangerous tendencies to escape or run at large. Again, this statute by its terms applies only to a "person having the care or custody" of such animal. RCW 9.08.010. The property owners had neither care nor custody of the dog.

■ Turning to the City of Seattle leash law, Seattle City Code, ch. 12.24, its provisions are also inapplicable to this case since that ordinance relates only to the "owner or custodian" of a dog, or to the "owner or custodian or other competent and authorized person; . . ." Seattle City Code § 12.24.010.

■ Common–law liability for injuries caused by dangerous dogs is based upon a form of strict liability. One who keeps a dog, who knows or reasonably should know that the dog has vicious or dangerous propensities likely to cause the injury complained of, has a duty to kill the animal or confine it. Any injury caused by such an animal subjects its

owner to prima facie liability without proof of negligence. *Johnston v. Ohls,* 76 Wn.2d 398, 400, 457 P.2d 194 (1969).

█ At common law, a person who is not the owner, keeper or harborer of a dog is not liable for an injury caused by the dog; in this context, "'"[h]arboring" means protecting, and one who treats a dog as living at his house and undertakes to control his actions is the owner or harborer thereof, as affecting liability for injuries caused by it.'" *Markwood v. McBroom,* 110 Wash. 208, 211, 188 P. 521 (1920). Here the property owners are not the owners, keepers or harborers of the dog that caused the injury; therefore, they cannot be held liable on that basis either.

So far as the rented premises are concerned, the owners' liability to third persons in connection therewith is based on the law applicable to "landlords" rather than that applicable to "occupiers." *Sunde v. Tollett,* 2 Wn. App. 640, 642, 469 P.2d 212, 41 A.L.R.3d 319 (1970). The landlords' ownership of the property does not in and of itself make them liable for persons thereon who own or possess, harbor or keep a dangerous dog. *Harris v. Turner,* 1 Wn. App. 1023, 1028, 466 P.2d 202 (1970).

█ The plaintiff vigorously contends that liability should be imposed on the landlords in this case based on what the plaintiff claims was the landlords' duty to third persons arising out of dangerous conditions and activities on the rented premises. *See* Comment, *Liability of Landlord and Tenant to Persons Injured on the Premises,* 39 Wash. L. Rev. 345 (1964). The plaintiff particularly relies on *Uccello v. Laudenslayer,* 44 Cal. App. 3d 504, 118 Cal. Rptr. 741, 81 A.L.R.3d 628 (1975).[1]

---

[1]*Uccello v. Laudenslayer,* 44 Cal. App. 3d 504, 118 Cal. Rptr. 741, 81 A.L.R.3d 628 (1975) holds that a duty of care arises when the landlord has actual knowledge of the presence of a dangerous animal and when the landlord has the right to remove the animal by retaking possession of the premises. Having decided the case on the basis set forth herein, however, we need not determine whether the holding of *Uccello v. Laudenslayer* should be the law of this jurisdiction and therefore we do not do so.

The plaintiff argues in this regard: "The key factual inquiry under all of [plaintiff's] theories of recovery is whether there is sufficient evidence in the record from which a jury could reasonably infer the [landlords] had or should have had knowledge of the vicious character of their tenant's dogs. A second related inquiry is whether the [landlords] acted reasonably in light of this knowledge." Reply Brief for Appellant at 2. We agree, but only insofar as such knowledge relates to a dog which caused or contributed to the injuries sustained.

It is unnecessary to detail the plaintiff's "dangerous conditions and activities" theories other than to point out that in order to recover under any of them, the plaintiff is required to establish that the landlords knew, or should have known, that the male Doberman pinscher, Nojo, that injured the plaintiff, was dangerous. As Professor Prosser's treatise explains, so far as the common law is concerned, dogs are usually regarded as harmless and in order to recover "it must be shown that the defendant knew, or had reason to know, of a dangerous propensity *in the one animal in question.*" (Footnote omitted. Italics ours.) W. Prosser, *Handbook of the Law of Torts* § 76, at 500 (4th ed. 1971). *Accord, Johnston v. Ohls, supra* at 404.

We have carefully reviewed the record presented and it does not establish that the landlords knew or had reason to know that Nojo was a dangerous animal. Nothing indicates that Mr. Ackmann had ever seen or heard of Nojo before the injury. The dog had only been on the premises from 1 to 3 weeks (depending on whose testimony is accepted). Mrs. Ackmann did not see or hear of it until April 1 or 2, 1978, just 2 or 3 days before the April 4, 1978 injury to the plaintiff. This was on April 1 or 2, when Mrs. Ackmann visited the duplex and saw Nojo for the first time. Nojo was inside the duplex and was "just standing there." Although at her deposition Mrs. Ackmann did use the phrase "[t]hat dog looked vicious to me," a reading of that in context with her complete deposition indicates no more than as she tes-

tified, that Nojo did nothing but just stand there. We fail to see how this can establish the required quantum of proof that the landlords, in the language of *Johnston v. Ohls, supra* at 400, knew or reasonably should have known "that the dog [had] vicious or dangerous propensities likely to cause the injury complained of, . . ." In any event, it is not suggested that there was any way that the tenant and sub-tenant could have been legally evicted between April 1 or 2 when Mrs. Ackmann first saw Nojo and April 4 when the injury occurred—the course which the plaintiff argues was open to the landlords and on which the plaintiff seeks to predicate the landlords' liability under the "dangerous conditions and activities" argument.

Even if we assume that the landlords should and could have evicted the tenant and subtenant when they first learned that the female Doberman pinscher, Tausha, and the toy poodle were on the premises in violation of the no pets clause in the rental agreement (and in which event the injury would have not occurred if the tenant and sub-tenants were no longer on the rental premises with Nojo on April 4), that still does not establish a liability issue in this case. When a duty is imposed and a defendant's conduct violates that duty, there is still no cause of action unless there is a sufficiently close, actual, causal connection between defendant's conduct and the actual damage suffered by the plaintiff. *Rikstad v. Holmberg,* 76 Wn.2d 265, 268, 456 P.2d 355 (1969). There would in that event be no such causal connection, but only speculation about what might or might not have happened on April 4, 1978, if something else had or had not happened.

Considering all of the evidence in the record and reasonable inferences therefrom in favor of the plaintiff, as we have, we conclude that no genuine issue as to any material fact exists as to the landlords' liability, and that as a matter of law the landlords were entitled to a judgment of dismissal. CR 56; *Morris v. McNicol,* 83 Wn.2d 491, 494, 519 P.2d 7 (1974). The trial court did not err in so ruling.

Affirmed.

JAMES, A.C.J., and SWANSON, J., concur.

Reconsideration denied August 6, 1980.

Review granted by Supreme Court October 24, 1980.