[No. 12774-1-II.   Division Two.   May 24, 1990.]

MARCI J. CLEMMONS, *Appellant,* v. CLARENCE FIDLER, ET AL, *Respondents.*

*Lane J. Wolfley* and *Wolfley, Kogut & Herdt,* for appellant.

*D. Michael Reilly* and *Lane Powell Moss & Miller,* for respondents.

WORSWICK, J.—We are asked to extend the common law rule concerning liability for dog bites by holding that a landlord is liable for harm caused by his tenant's dog if the landlord knows that the dog has vicious tendencies. We decline, and we affirm a summary judgment dismissing Marci Clemmons' claim against Clarence Fidler.

Terry Calhoun had no pets when she rented a single–family house in Forks from Clarence Fidler on an oral month–to–month tenancy. Later, she married Mike Philbrook and the Philbrooks acquired a pit bull named Popeye, which they kept chained to a truck axle in the yard of the Fidler house. Whether Popeye could reach walkways to the house while chained is disputed. The Philbrooks posted warning signs in the yard, but the animal nevertheless apparently attacked several neighborhood children before the incident that brought about this suit. Several neighbors claim that they complained to Fidler about the dog. Fidler acknowledges that he knew the Philbrooks kept a dog, but he denies that he knew the dog was vicious.

On April 16, 1987, the Philbrooks had a beer party. Marci Clemmons came, bringing her then 2–year–old son,

Anthony, and David Pope, an adult friend. Terry Philbrook says that she warned Clemmons 10 to 20 times during the course of the afternoon to keep Anthony away from the dog. Clemmons rejoins, however, that she was warned only to keep the Philbrooks' pit bull puppy from getting out of the house. The record is silent as to whether Pope was warned.

As Clemmons and Pope were preparing to leave the party about 4 p.m., Pope carried Anthony outside and into the area where Popeye was chained. As he did so, the puppy escaped from the house and ran toward Popeye. The two dogs began to scuffle, and Pope put Anthony down within Popeye's reach so he could separate the dogs. Popeye lunged for the baby and bit his face, causing serious permanent injuries.

■ Apparently sensing from earlier Washington cases that, on these facts, a landlord might possibly be held liable, Clemmons asks that we now adopt a firm rule of law to this effect and remand this case for trial of the several obvious factual disputes. We accept the invitation to adopt—or reaffirm—a rule, but not the one for which Clemmons contends, and, as will be seen, none of the factual disputes is material in view of the principle governing this case. *See Hackler v. Hackler,* 37 Wn. App. 791, 794, 683 P.2d 241 (summary judgment proper when, although some facts are in dispute, there are no material facts at issue under the legal principle that disposes of the controversy), *review denied,* 102 Wn.2d 1021 (1984).

■ Relying on dicta in *Markwood v. McBroom,* 110 Wash. 208, 188 P. 521 (1920), and *Shafer v. Beyers,* 26 Wn. App. 442, 613 P.2d 554, *review denied,* 94 Wn.2d 1018 (1980), Clemmons contends that because landlord Fidler knew or had reason to know of the dog's vicious tendencies, he is liable for the harm to Anthony. We disagree; the landlord's knowledge is immaterial. We hold that the common law rule applies: only the owner, keeper, or harborer of the dog is liable for such harm. This rule is consistent with our case law, with our former criminal and present civil

statutes on dogs, and with the analogous law governing landlord liability for defective conditions on leased premises.

The rule that we announce here has actually been with us for years. *Markwood v. McBroom, supra; Johnston v. Ohls,* 76 Wn.2d 398, 457 P.2d 194 (1969) (owner who knows or reasonably should know of a dog's dangerous propensities is subject to a form of strict liability for injuries caused by the dog); *Shafer v. Beyers, supra. Markwood* held that the receiver of the assets of a motion picture company could not be held liable for a child's death resulting from an attack by a dog that had been kept on property owned by the company, because liability is imposed only on the owner, keeper, or harborer of the dog, and the receiver did not fit any of those categories. *Markwood,* 110 Wash. at 211–12. *Shafer* held that absentee property owners were not the owners, keepers, or harborers, as defined in applicable statutes, of a dog that injured a pedestrian passing by a duplex that they had leased to tenants. *Shafer,* 26 Wn. App. at 446–47. Mere ownership of property, the court held, does not in and of itself make a landlord "liable for persons thereon who own or possess, harbor or keep a dangerous dog." *Shafer,* 26 Wn. App. at 447 (citing *Harris v. Turner,* 1 Wn. App. 1023, 1028, 466 P.2d 202, *review denied,* 78 Wn.2d 993 (1970)).

However, both *Markwood* and *Shafer* mentioned that there was no evidence that the property owners in question had knowledge or reason to know that the dogs were on the property or had vicious tendencies, and observed in dicta that had the defendant property owners known of the dog and its tendencies, a different question might have been presented. These dicta fostered the impression that if the property owners or landlords knew of the dog's tendencies, liability would attach. *Markwood,* 110 Wash. at 213; *Shafer,* 26 Wn. App. at 448. This impression should be dispelled. The common law rule, which is the settled law of Washington, is clear: only the owner, keeper or harborer of

such a dog is liable. The landlord of an owner, keeper or harborer is not.

■ The Legislature is presumed to know this common law rule. *See Woodson v. State,* 95 Wn.2d 257, 262, 623 P.2d 683 (1980) (Legislature presumed to know existing state of case law in areas of legislation). It could have changed the rule had it chosen to do so. *See Fain v. Chapman,* 89 Wn.2d 48, 53, 569 P.2d 1135 (1977) (Legislature possesses all general legislative power not specifically or by fair inference precluded by the constitution). However, in limiting liability to the dog's owner for dog bite injuries, the acts of our Legislature have always been consistent with the common law rule and, in fact, have reinforced it. A former criminal statute made it a misdemeanor for "[e]very person having the *care or custody*" of an animal known to be vicious to allow that animal to escape or run at large. (Italics ours.) RCW 9.08.010 (repealed by Laws of 1987, ch. 94, § 5, p. 292. Sections 1 through 4 of chapter 94 enacted statutes concerning dangerous dogs). In addition, RCW 16.08-.040, liability for dog bites, states:

> The *owner of any dog* which shall bite any person while such person is in or on a public place or lawfully in or on a private place including the property of the *owner of such dog,* shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.[1]

(Italics ours.) Further, recent legislation makes it unlawful to own a dangerous dog without a certificate of registration that issues only if the animal is properly enclosed and the *owner* has evidence of a $50,000 surety bond payable to a person injured by the dog or liability insurance in the amount of $50,000 insuring the owner for any personal injuries inflicted by the dog. RCW 16.08.080 (enacted by

---

[1]*See Beeler v. Hickman,* 50 Wn. App. 746, 751–53, 750 P.2d 1282 (1988) (Division Three construing this statute and stating that it is a question of fact whether a person who did not purchase a dog but keeps and cares for it is the dog's "owner").

Laws of 1987, ch. 94, § 2).[2] For the purposes of these particular dangerous dog statutes (RCW 16.08.070–.100), "owner" is defined as "any person, firm, corporation, organization, or department possessing, harboring, keeping, having an interest in, or having control or custody of an animal." RCW 16.08.070(7). Again, liability flows from ownership or direct control, and the *owner* of a dangerous dog is the person who must insure himself against such liability.

The rule is consistent, too, with the analogous law governing liability of landlords to third parties for defects on leased premises. A landlord owes no greater duty to the invitees or guests of his tenant than he owes to the tenant himself. *Charlton v. Day Island Marina, Inc.,* 46 Wn. App. 784, 790, 732 P.2d 1008 (1987) (landlord marina not liable to tenant for obvious and patent condition that led to carbon monoxide asphyxiation and therefore not liable to tenant's social guest) (citing *Regan v. Seattle,* 76 Wn.2d 501, 504, 458 P.2d 12 (1969)). Here, Fidler could hardly be held liable if Popeye attacked one of the Philbrooks. He is, therefore, not liable for injuries to Clemmons' son, their guest. This principle finds statutory support in RCW 59.18.060, which, after listing the landlord's duties, states:

---

[2]RCW 16.08.070 (definitions) states in part:

(2) "Dangerous dog" means any dog that according to the records of the appropriate authority, (a) has inflicted severe injury on a human being without provocation on public or private property, . . . or (c) has been previously found to be potentially dangerous [defined in subsection (1)], the owner having received notice of such and the dog again aggressively bites, attacks, or endangers the safety of humans or domestic animals.

. . . .

(4) "Proper enclosure of a dangerous dog" means, while on the owner's property, a dangerous dog shall be securely confined indoors or in a securely enclosed and locked pen or structure, suitable to prevent the entry of young children and designed to prevent the animal from escaping. Such pen or structure shall have secure sides and a secure top, and shall also provide protection from the elements for the dog.

Ironically, the 1987 Legislature passed these laws within days of Anthony's tragic mauling.

No duty shall devolve upon the landlord to repair a defective condition under this section, nor shall any defense or remedy be available to the tenant under this chapter, where the defective condition complained of was caused by the conduct of such tenant, his family, invitee, or other person acting under his control . . ..[3]

Our common law rule does not apply in all jurisdictions. In California, for example, a landlord is liable for dog bite injuries if the landlord has actual knowledge of the dog and its dangerous propensities coupled with the right to remove the dog by retaking possession of the premises. *Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 118 Cal. Rptr. 741, 743, 81 A.L.R.3d 628 (1975).[4] Clemmons urges us to follow *Uccello*. We decline, for we see no reason to depart from our settled rule. That rule recognizes the notion that a tenancy is equivalent to a conveyance: a lessor surrenders both possession *and* control of the land to the lessee during the term of the tenancy. *See* Restatement (Second) of Torts § 356, comment *a* (1965); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 63, at 434 (5th ed. 1984). Our rule also promotes the salutary policy of placing responsibility where it belongs, rather than fostering a search for a defendant whose affluence is more apparent than his culpability.

Affirmed.

ALEXANDER, C.J., and PETRICH, J., concur.

Review denied at 115 Wn.2d 1019 (1990).

---

[3]Under this provision, the presence of a dangerous dog can arguably be viewed as a "defective condition . . . caused by the conduct of such tenant". However, dogs appear to occupy a special niche in tort law.

[4]Division One considered *Uccello* in *Shafer v. Beyers, supra,* but declined to adopt the rule on those facts, which showed that defendant property owner had no knowledge of the dog.