[No. 60700-1.   En Banc.   September 29, 1994.]

CLARA J. FROBIG, *Respondent*, v. ANNE GORDON, ET AL, *Defendants*, GERALD W. BRANCH, ET AL, *Petitioners*.

*Magnuson Johnson & Lowell, P.S.,* by *Richard S. Lowell,* for petitioners.

*Reaugh Fischnaller & Oettinger,* by *Sylvia Luppert,* for respondent.

MADSEN, J. — Petitioners Gerald and Corliss Branch seek review of a Court of Appeals decision reversing the dismissal of a personal injury action brought against the Branches. This action arose out of an attack upon Respondent Clara Frobig by a Bengal tiger owned by a tenant on Petitioners' rental property. We granted review and now reverse the Court of Appeals.

## FACTS

The Branches own a large piece of property in Bothell, Washington. In 1988, the Branches leased this property to Anne Gordon, owner of Animal Advocates, Inc., a business providing wild and domestic animals for demonstrations, film, and video projects. Among the animals to be kept on the premises was "Sultan", a Bengal tiger. The Branches had some reservations about the wild animals Gordon intended to house and maintain that Gordon verbally agreed to:

1. Purchase her own policy of liability insurance;

2. Keep a dart gun available;

3. Build appropriate cages;

4. Not do anything illegal;

5. Never permit the animals to be unrestrained out of the cages;

6. Not use the premises for business purposes;

7. Conduct no filming of the animals on the premises, nor permit any other commercial use of the animals on the premises; and most importantly,

8. Vacate the premises if the neighbors protested too much.

*See Frobig v. Gordon*, 69 Wn. App. 570, 572, 849 P.2d 676 (1993). The Branches then leased Gordon the property but did not include the above conditions in the written agreement. After Gordon took possession of the property, neighbors began to complain about the wild animals to the Branches and to the Snohomish County Department of Planning and Community Development. The County investigated the complaints and found that although the keeping of wild animals violated no law, Gordon's activities violated Snohomish County zoning laws because she was operating a commercial business in an area not zoned for that type of activity. On June 29, 1988, the County issued to the Branches and to Gordon an Order To Cease and Desist a Commercial Business at that location within 30 days. The order provided a 10-day appeal period.

In response to the citation, the Branches notified Gordon that she must either cease operating her commercial business or vacate. However, on July 8, prior to the expiration of the 10-day appeal period, Gordon began filming a commercial video for The Boeing Company on the premises. "Sultan", the tiger, was part of the commercial and was unleashed during its filming. Clara Frobig agreed to assist in the filming and was attacked by Sultan. Frobig was seriously injured as a result of the attack.

Frobig brought suit for damages against the Branches, Gordon, Boeing, Snohomish County, and the director of the

commercial. We are concerned here only with Frobig's action against the Branches alleging negligence and strict liability. The trial court dismissed this action finding that, as landlords, the Branches had no liability. Frobig appealed and the Court of Appeals reversed and remanded for trial. In its decision, the court distinguished between the liability of a landlord for dog attacks on rented or leased premises and the liability for a tiger attack. *See Frobig*, at 576-77.

## ANALYSIS

■ The rule in Washington is that the owner, keeper, or harborer of a dangerous or vicious animal is liable; the landlord of the owner, keeper, or harborer is not. *Clemmons v. Fidler*, 58 Wn. App. 32, 35-36, 791 P.2d 257, *review denied*, 115 Wn.2d 1019 (1990); *Markwood v. McBroom*, 110 Wash. 208, 211-12, 188 P. 521 (1920); *Shafer v. Beyers*, 26 Wn. App. 442, 446-47, 613 P.2d 554, *review denied*, 94 Wn.2d 1018 (1980). In short, liability flows from ownership or direct control. *Clemmons*, at 37; *Shafer*, at 446; *see also* RCW 16.08.040 (*owner* of dog liable for dog's attacks).[1]

■ As the Court of Appeals observed in *Clemmons*, this rule is consistent with the analogous law governing liability of landlords to third parties for defects on leased premises. *Clemmons*, at 37. A landlord owes no greater duty to the invitees or guests of his tenant than he owes to the tenant himself. *Regan v. Seattle*, 76 Wn.2d 501, 504, 458 P.2d 12 (1969); *Kimball v. Millett*, 52 Wn. App. 512, 514, 762 P.2d 10 (1988), *review denied*, 111 Wn.2d 1036 (1989). Washington common law provides that a landlord will be liable to a tenant for harm caused by

(1) latent or hidden defects in the leasehold
(2) that existed at the commencement of the leasehold
(3) of which the landlord had actual knowledge
(4) and of which the landlord failed to inform the tenant.

---

[1] Two theories of liability exist at common law; a dog *owner* who knows of vicious propensities may be strictly liable and an *owner* without such knowledge may be negligent if he fails to reasonably prevent harm. *Beeler v. Hickman*, 50 Wn. App. 746, 753-54, 750 P.2d 1282 (1988). RCW 16.08.040 makes the *owner* strictly liable without regard to knowledge.

*Younger v. United States*, 662 F.2d 580, 582 (9th Cir. 1981) (citing William B. Stoebuck, *The Law Between Landlord and Tenant in Washington: Part I*, 49 Wash. L. Rev. 291, 342 (1974)). With regard to conditions on the land that develop or are created after the property has been leased, the general rule is that a landlord is not responsible, either to persons injured on or off the land, for conditions which develop or are created by the tenant after possession has been transferred. W. Page Keeton et al., *Prosser and Keeton on Torts* § 63, at 434 (5th ed. 1984); *see also* Danny R. Veilleux, Annotation, *Landlord's Liability to Third Person for Injury Resulting From Attack on Leased Premises by Dangerous or Vicious Animal Kept by Tenant*, 87 A.L.R.4th 1004, 1012 (1991). In the words of the Washington Court of Appeals, " 'The duty and liability of the invitor-lessor do not, as a rule, extend to matters having to do merely with the lessee's management or operation of premises which would be safe except for such management or operation, at least where the lessee is in sole actual control' ". *Peterick v. State*, 22 Wn. App. 163, 170-71, 589 P.2d 250 (1977) (citing 49 Am. Jur. 2d *Landlord and Tenant* § 763 (1970)), *review denied*, 90 Wn.2d 1024 (1978), *overruled on other grounds by Stenberg v. Pacific Power & Light Co.*, 104 Wn.2d 710, 709 P.2d 793 (1985).

These common law principles have statutory parallels in Washington. The Residential Landlord-Tenant Act of 1973, RCW 59.18.060, provides that a landlord has no duty to repair a defective condition caused by a tenant, and RCW 59.18.130(5) states that it is the tenant's duty not to permit a nuisance on the rental premises.

While Washington courts have most often applied these principles of liability in cases dealing with a tenant's vicious dog (though *Kimball* did involve a bull), other jurisdictions have applied similar principles in cases concerning wild animals. *See Theobald v. Grey Pub. Relations, Inc.*, 39 A.D.2d 902, 334 N.Y.S.2d 281 (no lessor liability resulting from lion attack at car show), *appeal denied*, 31 N.Y.2d 644 (1972); *Sharp v. Levine*, 528 So. 2d 1369 (Fla. Dist. Ct. App.

1988) (landlord-tenant relationship insufficient to impose "keeper" liability for elephant attack); *Collins v. Otto*, 149 Colo. 489, 369 P.2d 564 (1962) (no case against landlord where tenant's coyote attacked child).

We do not believe that a separate rule of law for cases involving wild animal attacks is necessary. Courts have long recognized that a vicious dog and a wild animal are equally dangerous, as the following observation from *Laverone v. Mangianti*, 41 Cal. 138 (1871) illustrates. In referring to the defendants' insistence that a person may lawfully keep a ferocious dog, the chief justice wrote, "That position may be conceded, and it may also be conceded that he has the same right to keep a tiger. The danger to mankind and the injury, if any is suffered, comes from the same source — the ferocity of the animal." *Laverone*, at 139. Vicious dogs and tigers are both dangerous, and if a tenant bears sole responsibility for the consequences of owning a dog, then he or she should be solely responsible for the consequences of owning a tiger.

The Court of Appeals found that the landlords here might be liable for third party injuries because they knew their tenant would have a dangerous animal on the premises before they rented their property to her. This prior knowledge of the landlords, however, has no significance. Under Washington law, the landlords would not be liable to the tenant for the tiger's attack so should not be liable to third parties for injuries inflicted by the animal. *See Regan*, at 504. The wild animals were Anne Gordon's alone, and under Washington law liability resulting from the ownership and management of those animals rests with Anne Gordon alone.

We recognize that some courts have held a landlord liable for injuries inflicted by a tenant's dangerous animal where the landlord knows of the potential danger and has some sort of control, either by virtue of provisions in the lease or previous dealings with the tenant, over the animal's presence. *See* Veilleux, at 1012; 4 Stuart M. Speiser et al., *American Law of Torts* § 14:76, at 257-58 (1987). The principal case espousing this view is the opinion on which the

Court of Appeals relies. In *Strunk v. Zoltanski*, 62 N.Y.2d 572, 468 N.E.2d 13, 479 N.Y.S.2d 175 (1984), the court found a landlord liable where a child approached the tenant's tied-up German Shepherd dog and was bitten. The court found liability because the landlord knew the dog was vicious when she leased the premises (she had seen it " 'barking very loudly, jumping up and down, growling and acting ferocious' " when it was tied up) and because she "took no measures by pertinent provisions in the lease or otherwise to protect third persons who might be on the premises from being attacked . . .". *Strunk*, at 574-75. The court thus imposed on the landlord a duty,

> at the inception of the lease when it is known that the tenant will keep a watch or guard dog, to take reasonable precautions for the protection of third persons, by provisions in the lease with respect to confinement or control of the dog or otherwise.

*Strunk*, at 577.

The dissenting opinion in *Strunk* observed that if the landlord's liability were governed by principles of ordinary negligence, application of the above-imposed duty would result in a finding of no liability under the facts presented:

> [B]oth at the time the landlord saw the dog and at the time of plaintiff's injury, the dog had been tied up by the tenant. The landlord's liability thus must rest not on a negligent failure to see that the dog was confined or controlled but on strict liability deriving from the simple fact that the landlord knew at the time of leasing that the tenant kept a dog with "vicious propensities[.]"

(Citation omitted.) *Strunk*, at 578-79 (Kaye, J., dissenting). The dissent found no basis for imposing strict liability, adding that "[l]iability should not be imposed upon one who has no control over the tort-feasor". *Strunk*, at 579 (Kaye, J., dissenting). The dissent further noted that a landlord's awareness of a dangerous condition existing when a tenant first takes possession should not create landlord liability when the tenant, who has the opportunity to protect others from the dangerous condition, fails to do so. *Strunk*, at 579 (Kaye, J., dissenting).

The majority in *Strunk* relied principally on *Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 118 Cal. Rptr. 741, 81 A.L.R.3d 628 (1975) for its holding. *Uccello*, a decision of a California intermediate appellate court, involved a month-to-month lease which specifically provided permission for the lessees to keep the offending German Shepherd dog. The animal attacked a neighbor child who was visiting the property. The court found liability based on California Civil Code § 1714 (West 1985), providing that everyone is responsible for an injury to another caused by a lack of ordinary care or skill in the management of his or her property or person. *Uccello*, at 511. That court acknowledged the absence of case authority for its position but concluded that "enlightened public policy" dictates that "[t]here is a moral blame attached to a landlord's conduct" when he can evict a tenant with a dangerous dog but fails to do so. *Uccello*, at 512-14.

Even if we agreed with *Uccello* and *Strunk* and the analysis they represent, as applied here, there is no liability. As the Court of Appeals noted, *Strunk* requires a landlord with knowledge that dangerous activities may take place on rental premises "to take such precautions as lie within the control of the landlord reasonably to protect such third persons from the injuries to be foreseen if no such precautions are taken". *Strunk*, at 575, *cited in Frobig*, at 575.

According to the Branches (and the Court of Appeals), the Branches leased to Gordon only after she agreed to (1) purchase her own policy of liability insurance; (2) keep a dart gun available; (3) build appropriate cages; (4) not do anything illegal; (5) never permit the animals to be unrestrained out of their cages; (6) not use the premises for business purposes; (7) conduct no filming of the animals on the premises, nor permit any other commercial use of the animals on the premises; and (8) vacate the premises if the neighbors protested too much. *Frobig*, at 572. Had Gordon adhered to these precautions, her tiger would not have injured Clara Frobig under the circumstances presented here. Frobig's injuries occurred during the filming of a commercial, in direct contravention of the lease provisions. The tiger was also unre-

strained during the filming at a time when Gordon possessed neither a dart gun nor liability insurance.

Further, the only dates provided in the record show that complaints about the animals were filed with Snohomish County between June 20, 1988, and July 7, 1988. The attack occurred July 8, 1988. Under Washington law, a lease for an indefinite time may be terminated by written notice of 20 days or more preceding the end of the month or the period when payment is due. RCW 59.18.200(1). Here, there were not 20 days between the first date of the complaints and the end of the month, nor even 20 days between the complaints and the July 8 tiger attack. While there is no copy of the lease in the record, it does not appear that the Branches had time to evict Gordon before Frobig was injured. *See Fernandez v. Marks*, 3 Haw. App. 127, 642 P.2d 542 (1982) (even with knowledge of dogs' viciousness, landlord could not have evicted dogs' owner and dogs from premises in time to prevent attacks in question).

The Branches did tell Anne Gordon to cease her commercial business or vacate on June 29, 1988, which was soon after the first complaint was filed. This cease or vacate directive came after Snohomish County investigated the premises and found that Gordon's operation of a business violated local zoning provisions. Had Gordon obeyed this order immediately, neither the filming of the commercial nor Frobig's injuries would have occurred. However, Gordon had 30 days within which to cease or vacate and 10 days within which to appeal the order, and she chose to pursue her commercial activities during this period. The attack on Clara Frobig occurred before the appeal period expired. It is difficult to see how the Branches could have acted more expeditiously to evict Gordon, if that was indeed their duty as a result of the complaints made about her animals.

The issue of the Branches' duty to Clara Frobig however, is not a question of fact, as the Court of Appeals found, nor is it a question of morality, as the court in *Uccello* suggests. Rather, the issue is a matter of law, and we conclude that landlords have no duty to protect third parties from a

tenant's lawfully owned but dangerous animals. We therefore reverse the Court of Appeals and affirm the trial court's grant of summary judgment dismissing Frobig's claim against the Branches, the landlords in this case.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.