FILED
COURT OF APPEALS DI
STATE OF WASHINGTON

2013 AUG 26 AM 9: 36



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| MARGARET L. BRISCOE, | ) | No. 69103-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RANDALL LAMONICUS MCWILLIAMS, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| LEVITICUS JADE MCWILLIAMS, | ) | |
| ELIZABETH ANN ROWLAND, and | ) | |
| VICTOR GREER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Defendants. | ) | FILED: August 26, 2013 |
| | ) | |

VERELLEN, J. — Common law liability for dog bites flows only to the owner, harborer or keeper of a dog. Margaret Briscoe suffered injuries after being attacked by a dog left unattended in an apartment. Briscoe sued tenant Randall McWiliams, who had hired his brother Levi to clean the apartment.[1] Levi owned the dog and left it in the apartment while he went to obtain cleaning supplies. Briscoe alleges respondeat superior (agency),[2] premises liability, and negligent entrustment claims against Randall. Briscoe appeals the trial court's summary judgment dismissing her claims. Because

---

[1] We refer to the brothers by first names for ease of reference.

[2] Appellant refers to agency and respondeat superior interchangeably in her briefing.

Randall was not the owner, harborer or keeper of the dog, we affirm dismissal of Briscoe's claims.

## FACTS

Randall McWilliams rented an apartment from his friend, Victor Greer, beginning in March 2009. The lease was on a month-to-month basis and prohibited pets. During the lease, his brother Levi would visit and bring Jersey, his pit bull. If other people were present at the apartment, Levi would ensure Jersey was locked either in one of the rooms or in the downstairs garage.

Greer decided to sell his apartment in early 2010, so Randall began the process of moving out. Greer listed the apartment with a realty company and informed Randall that real estate agents would have access to the apartment via the lockbox installed on the front door. On July 14, 2010, Randall left for California. Randall informed Greer he would be out of the apartment by July 15, 2010. Randall hired Levi to clean the apartment and move some of Randall's items to their mother's house. Randall agreed to pay Levi $300 for the work.

On July 16, 2010, Randall called Levi to check in on the cleaning. According to Randall, Levi told him the cleaning would be completed by that evening. Randall testified at his deposition that "I presumed he was going to be done [by July 16]. I anticipated he'd probably have to go back and get some cleaning supplies, but the majority of the job was going to be done."[3] After speaking with Levi, Randall deposited the $300 into Elizabeth Rowland's (Levi's girlfriend's) account.

_____

[3] Clerk's Papers at 96.

That same day, July 16, Randall contacted Greer and informed him the apartment was clean and vacant. Greer then telephoned Margaret Briscoe, his aunt, to request that she visit the apartment the next day, July 17, to confirm that Randall had moved out. Randall did not know Greer requested Briscoe to come to the apartment on July 17.

Levi had not finished cleaning by July 16. Levi was still at the apartment on July 17, with Jersey. On July 17, Levi left the apartment to get some cleaning supplies with Jersey loose in the apartment. Briscoe came to the apartment while Levi was out. When she entered, Jersey attacked her, injuring her legs.

Briscoe sued Levi and Rowland (Jersey's owners), Randall, and Greer. Briscoe voluntarily dismissed Greer. Briscoe obtained default judgment against Levi and Rowland, but they are judgment proof and have no insurance.

Briscoe's causes of action against Randall included respondeat superior (agency), premises liability, and negligent entrustment, as well as a claim for violation of the lease agreement as a third-party beneficiary. Randall moved to dismiss all of the claims under CR 12(b)(6). The court dismissed the third-party beneficiary claim. Randall then moved for summary judgment on the three remaining claims, arguing generally that only owners, keepers or harborers of a dog could be held liable for injuries. He specifically argued that no Washington case had ever permitted a dog bite victim to recover based on agency law. The trial court granted the motion and dismissed all three claims. Because all claims had been resolved, the trial court entered final judgment. Briscoe appeals.

## DISCUSSION

Briscoe argues the trial court erred in dismissing her claims against Randall, contending she should have the chance to argue her negligent entrustment, respondeat superior and premises liability claims to the jury.[4] We review de novo a trial court's decision on summary judgment, performing the same inquiry as the trial court.[5] We may affirm an order granting summary judgment on any basis supported by the record.[6]

Under longstanding Washington common law, only the owner, keeper or harborer of a dog is liable for injuries caused by the dog.[7] In 1920, our Supreme Court considered whether to overturn a verdict in favor of a plaintiff who had sued the receiver of the Washington Motion Picture Corporation for negligence when a dog kept on its property escaped and killed the plaintiff's young son.[8] One of the employees of the corporation owned the dog and was paying another employee to feed it.[9] The court

---

[4] We reject Briscoe's contention that the trial court had already ruled on the viability of her liability theories when it denied Randall's CR 12(b)(6) motion. As Randall rightly argues, the trial court has the discretion to deny a motion to dismiss on a claim but then grant summary judgment on that same claim. Lindsey v. Dayton-Hudson Corp., 592 F.2d 1118, 1121 (10th Cir. 1979).

[5] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We view all facts and reasonable inferences therefrom most favorably toward the nonmoving party. Id. Summary judgment is proper if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.; CR 56(c). If the nonmoving party fails to controvert material facts supporting the summary judgment motion, those facts are considered to be established. Cent. Wash. Bank v. Mendelson-Zeller, Inc., 113 Wn.2d 346, 354, 779 P.2d 697 (1989).

[6] LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

[7] Under Washington's strict liability dog bite statute, RCW 16.08.040, only owners are liable for damages. Briscoe does not assert any cause of action under the statute against Randall.

[8] Markwood v. McBroom, 110 Wash. 208, 208-09, 188 P. 521 (1920).

[9] Id. at 209-10.

4

looked to the common law and reasoned that the receiver was plainly not the dog's owner or keeper.[10] The court also applied the following definition: "'Harboring' means protecting, and one who treats a dog as living at his house, and undertakes to control his actions, is the owner or harborer thereof, as affecting liability for injuries caused by it."[11] In concluding the receiver was not a harborer of the dog, the court noted the dog was not an asset of the corporation, the dog was not in the receiver's possession, and the receiver could not be charged with knowledge of the dog's existence.[12] Having determined the receiver was neither the owner, keeper or harborer of the dog, the court vacated the judgment, reasoning that "[a]t common law a person would not be liable for an injury resulting from the bite of a dog *unless* he was the owner, keeper, or harborer of the dog."[13]

Many decades later, in Frobig v. Gordon, the court considered whether the plaintiff, who had been mauled by a Bengal tiger, could recover not against the keeper of the tiger but against the keeper's landlords (the Branches).[14] Anne Gordon, the keeper of the tiger and the tenant, leased property from the Branches.[15] Gordon was in the business of providing wild animals for film and video projects.[16] Gordon had the tiger on her property for a project, and the tiger escaped during the filming of a

---

[10] Id. at 211.

[11] Id.

[12] Id. at 211-12.

[13] Id.

[14] 124 Wn.2d 732, 881 P.2d 226 (1994).

[15] Id. at 733.

[16] Id.

commercial.[17] The tiger attacked Frobig, seriously wounding her.[18] The court considered whether the trial court had properly dismissed Frobig's action against the landlords for negligence and strict liability.[19]

The court grounded its analysis in the common law rule announced in Markwood v. McBroom, stating, "The rule in Washington is that the owner, keeper or harborer of a dangerous or vicious animal is liable; the landlord of the owner, keeper, or harborer is not."[20] The court then stated, "In short, liability flows from ownership or direct control."[21] The court rejected the viability of the plaintiff's claim against the landlords because a "landlord owes no greater duty to the invitees or guests of his tenant than he owes to the tenant himself."[22]

The court reasoned further that the landlords' prior knowledge of the tiger on the property had no significance because under Washington law, the "landlords would not be liable to the tenant for the tiger's attack so should not be liable to third parties for injuries inflicted by the animal."[23] The court concluded that "[t]he wild animals were Anne Gordon's alone, and under Washington law liability resulting from the ownership and management of those animals rests with Anne Gordon alone."[24] Therefore, the court foreclosed any actions against landlords for liability arising out the dangerous

---

[17] Id. at 734.

[18] Id.

[19] Id. at 735.

[20] Id. (citing Markwood, 110 Wash. at 208-09).

[21] Id.

[22] Id.

[23] Id. at 737.

[24] Id.

animals owned, kept, or harbored by tenants.

In Clemmons v. Fidler, Division Two of this court declined to extend the common law rule to apply to landlords, even where the landlord knows the tenant has a dog with vicious tendencies.[25] There, the plaintiff sued the landlord for injuries to her young son under the theory that the landlord knew his tenants' dog was dangerous.[26] The court reasoned, "[T]he landlord's knowledge is immaterial. We hold that the common law rule applies: only the owner, keeper, or harborer of the dog is liable for such harm."[27] The court continued, "This rule is consistent with our case law, with our former criminal and present civil statutes on dogs, and with the analogous law governing landlord liability for defective conditions on leased premises."[28]

"Common law liability for injuries caused by vicious or dangerous dogs is based upon a form of strict liability. . . . Any injury caused by such an animal subjects the owner to prima facie liability without proof of negligence."[29] Issues of negligence and contributory negligence, fault and comparative fault therefore have no application.[30] The rationale rejecting landlord liability for a tenant's dog expressed in Clemmons and Frobig applies equally to Randall's liability for Levi's dog, regardless of whether Levi

---

[25] 58 Wn. App. 32, 33, 791 P.2d 257 (1990); see also Frobig v. Gordan, 124 Wn.2d 732, 735, 881 P.2d 226 (1994) (citing Clemmons).

[26] Id. at 33-34.

[27] Id. at 34.

[28] Id. at 34-35; see also Shafter v. Beyers, 26 Wn. App. 442, 446-47, 613 P.2d 554 (1980) (court did not err in dismissing on summary judgment plaintiff's action against the owner of the premises where the dog in question was kept by a subtenant because neither the dog bite statute nor the common law allowed a plaintiff to recover against a landlord, where landlord was not the owner, keeper or harborer of the dog).

[29] Johnston v. Ohls, 76 Wn.2d 398, 400, 457 P.2d 194 (1969).

[30] Id. at 401.

was Randall's agent (respondeat superior) or business invitee (premises liability theory). Nor does the narrowly drawn common law rule permit a claim for negligent entrustment. The common law restricts liability to the owner, keeper or harborer because they own or have direct control of the animal.[31]

There is no genuine issue of material fact that Randall was neither the owner, harborer, or keeper of Jersey. He had no direct control of the animal. Under the longstanding common law rule announced in Markwood, and reiterated in Frobig and Clemmons, a plaintiff injured by an animal must seek recovery from the owner, keeper or harborer of that animal. The common law precludes Briscoe's alternative theories of liability. Because Randall does not fall within the class of people subject to common law liability, we affirm dismissal of Briscoe's claims against him. [32]

WE CONCUR:

_____

_____

_____

---

[31] Government agencies involved with animal control may face liability under the public duty doctrine, see, e.g., Gorman v. Pierce County, No. 42502-5-II, slip op. at 7-15 (Wash. Ct. App. Aug. 13, 2013); Livingston v. City of Everett, 50 Wn. App. 655, 658, 751 P.2d 1199 (1988), but that discrete theory of recovery does not conflict with the common law standard limiting liability to the owner, keeper or harborer of an animal.

[32] See Hackler v. Hackler, 37 Wn. App. 791, 794, 683 P.2d 241 (1984) (summary judgment is proper when, although some facts might be disputed, there are not material facts at issue under the legal principle that disposes of the controversy).