[No. 29411-3-I.   Division One.   April 26, 1993.]

CLARA J. FROBIG, *Appellant,* v. ANNE GORDON, ET AL, *Respondents.*

---

*Jeffery M. Campiche, Sylvia Luppert,* and *Reaugh Fisch-naller & Oettinger,* for appellant.

*Richard S. Lowell,* for respondents.

COLEMAN, J. — Clara J. Frobig appeals the Superior Court's grant of summary judgment which dismissed her claim against Gerald and Corliss Branch. Frobig contends that the Superior Court erred in concluding that a landlord is never liable for injuries to a tenant's invitee inflicted by the tenant's animal, notwithstanding that the animal is a tiger and that

the landlord leased the premises knowing that the tiger would be kept there for use in the tenant's business. We reverse.

FACTS ON MOTION FOR SUMMARY JUDGMENT[1]

Gerald W. Branch and Corliss Branch owned a large piece of property in Bothell, Washington, which included their own home, a horse ranch, and a small rental home. Mr. and Ms. Branch considered leasing their rental home to Anne Gordon who owned Animal Advocates, a business providing wild and domestic animals for demonstrations, film, and video projects. Gordon owned an adult bengal tiger, an adult lion, a cougar, a bobcat, timber wolves, and other animals. Although the Branches were concerned about the risks of keeping wild animals, Gordon verbally agreed to:

> (1) purchase her own policy of liability insurance; (2) keep a dart gun available; (3) build appropriate cages; (4) not do anything illegal; (5) never permit the animals to be unrestrained out of the cages; (6) not use the premises for business purposes; (7) conduct no filming of the animals on the premises, nor permit any other commercial use of the animals on the premises; and most importantly, (8) vacate the premises if the neighbors protested too much.

Brief of Respondent, at 2-3.

Prior to executing the lease, the Branches knew that a tiger would be kept on the property and recognized the risk posed by wild animals. Mr. Branch admitted that tigers are a predatory animal and that he and his wife shared concerns about whether the tiger or the other animals were apt to attack. However, the written lease contained no provision for keeping the animals caged, and there was only a verbal agreement to that effect. Based upon Gordon's oral representations, the Branches agreed to lease her the property.[2]

---

[1]Because this is a summary judgment motion, we analyze the facts in a light most favorable to the nonmoving party.

[2]Subsequently, Gordon violated the terms of her oral agreement by failing to purchase liability insurance, failing to keep a dart gun nearby, violating the zoning laws, permitting the tiger to walk unrestrained outside of its cage, and using the premises to film the tiger for a commercial.

After Gordon and her animals moved into the neighborhood, many neighbors complained about the wild animals to the Branches. In response, Gordon made plans to hold a community meeting and asked the Branches for permission to hold the meeting on the Branches' property in their barn. They agreed. At the meeting Ms. Branch introduced the neighbors to Gordon, who attempted to allay the neighbors' fears by explaining the steps that were taken to control the animals.

The neighbors also complained to the Snohomish County Department of Planning. Between June 21 and July 7, 1988, 16 written complaints were filed with the County, stating, among other things, that a wolf had escaped into the neighborhood. Edward D. Soderman, a code enforcement officer in the Community Development Department of Snohomish County, investigated their complaints. Soderman determined that Gordon's activities violated Snohomish County zoning laws in that she was operating a commercial business in an area not zoned for that type of activity. On June 29, 1988, the County issued to the Branches and to Gordon an order to cease and desist a commercial business at that location.

After receiving a copy of the citation served on Gordon, the Branches notified Gordon that she must either cease operating her commercial business or vacate. However, the citation which Gordon received provided for a 30-day appeal period, and Gordon planned on appealing. Prior to the expiration of the 30-day period, the adult bengal tiger owned by Gordon mauled Clara Frobig.

On July 8, 1988, Frobig, an employee of the Branches, finished work at the Branches' farm and went next door to the animal compound. Gordon and the Boeing Company were in the process of shooting a commercial video, and Frobig was asked to participate. Frobig agreed, and she and Mike Cox were given the task of holding a wire fence to direct the tiger while it was being filmed. The first "take" went without incident. The tiger was unleashed and enticed to walk through tall grass toward an awaiting trainer. Fro-

big was surprised to see the tiger unleashed, but when the crew asked for a second take she continued to assist.

On the second take the tiger turned away from its prior path and toward the end of the fence held by Frobig. As the tiger headed toward her at a rapid pace, Frobig shifted her position, tripped on the blackberry vines at her feet, and fell forward onto the fence. After she had fallen, the tiger sprang toward her, picked her up by her neck and shoulder in its teeth, and carried her about 10 feet. Eventually, she was freed.[3] Frobig was hospitalized in critical condition, underwent three emergency surgeries, and continues to suffer permanent neurological and muscular-skeletal impairment.

Frobig brought suit for damages against the Branches, Gordon, Boeing, Snohomish County, and the director of the commercial. Frobig settled her dispute with Boeing, the Superior Court dismissed her actions against the director and Snohomish County, and the claim against Anne Gordon was stayed pending Gordon's bankruptcy proceedings. In addition, the court dismissed her action against the Branches on the theory that, as landlords, they had no liability. Frobig appeals the Superior Court's entry of summary judgment in favor of Gerald and Corliss Branch.

A. Negligence. Frobig first contends on appeal that the Superior Court erred in entering a summary judgment of dismissal which found that the Branches violated no duty of care to Clara Frobig by permitting Anne Gordon to harbor wild animals on their rental property. The Superior Court decided that the Branches' tort liability for personal injuries is based on the law applicable to landlords and that a landlord owes no greater duty to the invitees of her tenant than she owes the tenant herself. *See Sunde v. Tollett*, 2 Wn. App. 640, 642-43, 469 P.2d 212, 41 A.L.R.3d 319 (1970); *Charlton v. Day Island Marina, Inc.*, 46 Wn. App. 784, 790, 732 P.2d 1008 (1987). Citing *Clemmons v. Fidler*, 58 Wn. App. 32, 34, 791

---

[3]One party sprayed a fire extinguisher at the tiger and another party jumped on the tiger's back and cracked the tiger's head with his own head. The tiger was leashed and returned to its cage.

P.2d 257, *review denied*, 115 Wn.2d 1019 (1990), the Superior Court concluded that even though the Branches knew of the tiger's potential for violence, such knowledge could not create liability in the Branches unless the Branches had been acting as the owner, keeper, or harborer of the animal.[4]

We disagree with the conclusion reached by the *Clemmons* court as applied to the facts of this case and adopt instead the rule announced in *Strunk v. Zoltanski*, 62 N.Y.2d 572, 468 N.E.2d 13, 479 N.Y.S.2d 175 (1984). In *Strunk*, a boy of 14 was bitten on the mouth and arm by a German shepherd dog. Following suit, the trial court's denial of the landlord's motion for summary judgment was affirmed. *Strunk*, at 574. The appellate court reasoned that

> the landlord, by leasing the premises to the owner of the dog, could be found affirmatively to have created the very risk which was reasonably foreseeable and which operated to injure plaintiff. . . . [T]he jury could find that, having created this risk, Mrs. Zoltanski took no steps reasonably calculated to protect this plaintiff from the injuries which he suffered. . . .
> . Considerations of public policy . . . require that a landlord who, prior to leasing the premises, has knowledge that the tenant may be expected to carry on activities on the premises in such a manner as unreasonably to expose third persons to risk of physical injury has a duty to take such precautions as lie within the control of the landlord reasonably to protect such third persons from the injuries to be foreseen if no such precautions are taken. In the present case, no evidence was tendered on the motion for summary judgment that this landlord, aware of the danger of the situation, took any steps to protect this plaintiff.
> . . . .

---

[4] In *Clemmons*, Terry Calhoun "had no pets when she rented a single-family house . . . from Clarence Fidler on an oral month-to-month tenancy." *Clemmons*, at 33. She later married Mike Philbrook, and they acquired two pit bulls. *See Clemmons*, at 33-34. Subsequently, Marci Clemmons attended a Philbrooks beer party with her 2-year-old son, Anthony, and as Clemmons and Anthony were leaving the party, a pit bull lunged at Anthony, biting his face and "causing serious permanent injuries." *Clemmons*, at 33-34. Clemmons sued Fidler, contending that the landlord was liable for Anthony's injuries because he "had reason to know of the dog's vicious tendencies". *Clemmons*, at 34. The Superior Court granted summary judgment in favor of Fidler and Division Two affirmed, holding that "only the owner, keeper, or harborer of the dog is liable for such harm." *Clemmons*, at 34.

   . . . We do not intend to imply that there must be a finding that this landlord is liable for the injuries suffered by this plaintiff; we do no more than conclude that there are factual questions which foreclose dismissal based on the submissions on the motion for summary judgment.

*Strunk*, at 575-77.[5]

   ■ We find the reasoning of the *Strunk* court persuasive and hold that landlord liability for attacks by wild or predatory animals is appropriate under some circumstances. As in *Strunk*, we do not imply that the Branches are liable, but conclude that there is an issue of fact as to whether the Branches took reasonable precautions to protect third persons from foreseeable injuries. Thus, dismissal of Frobig's negligence claim by summary judgment was inappropriate.

   ■ B. Strict liability. Citing *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 6, 810 P.2d 917, 817 P.2d 1359 (1991), Frobig contends that landlords should be strictly liable for injuries caused by a tenant's abnormally dangerous activities where a landlord has permitted the premises to be used for those activ-

---

[5]Other courts have also followed this general approach. In *Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 507, 118 Cal. Rptr. 741, 743, 81 A.L.R.3d 628 (1975), the California Court of Appeal held that "a duty of care arises when the landlord has actual knowledge of the presence of the dangerous animal and when he [or she] has the right to remove the animal by retaking possession of the premises." Similarly, two other appellate courts have adopted the general rule that a landlord is liable for attacks by his tenant's vicious dogs where the landlord had "knowledge" and "ability to control". *See McCullough v. Bozarth*, 232 Neb. 714, 724-25, 442 N.W.2d 201, 208, 87 A.L.R.4th 991 (1989) (7-year-old was bitten on the hand and face by a pit bull dog); *Vasques v. Lopez*, 509 So. 2d 1241, 1243 (Fla. Dist. Ct. App. 1987) (child attacked by a pit bull dog). One court has imposed a duty of care upon landlords to protect third parties from known dangers, including vicious dogs. *See Vigil v. Payne*, 725 P.2d 1155, 1157 (Colo. Ct. App. 1986) (Where "a landlord has actual knowledge that a tenant owns an animal whose vicious actions have created a clear potential for injury, the landlord has a duty to take reasonable precautions to protect third persons from the animal."). Finally, one court has found potential landlord liability for wild animal bites. *See Jones v. Bramalea Ctrs., Inc.*, 559 So. 2d 298, 298-99 (Fla. Dist. Ct. App. 1990) (A 5-year-old was attacked by a Himalayan bear which was performing at a shopping mall, and the child's mother sued the property owner. The court held that lessor liability could attach if the lessor was actively involved in the lessee's business and had the right to control the lessee's activities, including the wild bear act.).

ities. However, although harboring predatory wild animals may well be an abnormally dangerous activity, *Klein* is inapposite to Frobig's landlord liability claim. *Klein* only holds that a pyrotechnician is strictly liable for the damages caused by his or her fireworks at a public fireworks exhibition. *Klein*, at 3. At best, *Klein* can be analogized to stand for the proposition that a short term *lessee* of public property who conducts an abnormally dangerous activity is strictly liable.[6]

■ C. Assumption of the risk. The Branches contend on appeal that the Superior Court incorrectly denied their defense of assumption of the risk as a basis for summary judgment of dismissal. Under the facts set forth, assumption of the risk would function as a damage reducing factor only. *See Kirk v. WSU*, 109 Wn.2d 448, 453-54, 746 P.2d 285 (1987). Therefore, the trial court did not err in removing the Branches' assumption of the risk defense as a basis for dismissal on summary judgment.

We reverse and remand for trial.

GROSSE and BAKER, JJ., concur.

Review granted at 122 Wn.2d 1022 (1993).

---

[6] Frobig also contends that the Branches are liable under the theory of nuisance and upon the grounds that their special relationship to the lessee created a duty to third parties. However, the Branches' statement that the theories of nuisance and special relationship were never asserted below is unrebutted by Frobig. Because this court need not address issues not raised below, we do not address them. *See Fahn v. Cowlitz Cy.*, 93 Wn.2d 368, 384, 610 P.2d 857, 621 P.2d 1293 (1980).