[No. 15632.   Department One.   March 16, 1920.]

LEE MARKWOOD, *Respondent*, v. FRED K. McBROOM, *as Receiver of the Washington Motion Picture Corporation, Appellant.*[1]

ANIMALS (9)—PERSONS LIABLE—BITE OF DOG.  At common law a person is not liable for injuries from the bite of a dog unless he was owner, keeper, or harborer of the dog.

SAME (9)—PERSONS LIABLE—"HARBORER"—RECEIVERS.  The receiver of a motion picture company is not the owner, keeper or "harborer" of a dog owned by a former employee of the company and kept and fed by the receiver's watchman, where the receiver had no knowledge of such fact or of the existence of the dog, which was kept on an unfrequented spot, and the watchman's care of it was beyond the scope of his employment with the receiver.

MASTER AND SERVANT (172)—INJURY TO THIRD PERSON—SCOPE OF EMPLOYMENT—KEEPING OF DOG.  It is beyond the scope of employment of a watchman of premises in possession of a receiver, to keep and feed a dangerous dog for a former employee of the insolvent company.

ANIMALS (10)—PERSONS LIABLE—KNOWLEDGE IMPUTABLE TO RECEIVER.  Knowledge of the officers of an insolvent company that a dangerous dog had been kept on the premises could not be imputed to the receiver where the dog belonged to an employee and was not a part of the assets.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered June 27, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in a parent's action for the wrongful death of a minor child.  Reversed.

*Horace W. Kimball, W. W. Zent,* and *Zent & Jesseph,* for appellant.

*Ripley & Quackenbush,* for respondent.

MAIN, J.—The plaintiff brought this action to recover damages for the death of his son, a child five or six years old, caused by the bite of a dog.  The action

[1]Reported in 188 Pac. 521.

is against the receiver of the Washington Motion Picture Corporation, as such receiver. The cause was tried to the court and a jury, and resulted in a verdict for the plaintiff. At the conclusion of the plaintiff's evidence, the defendant challenged the sufficiency thereof and moved for a directed verdict. This motion, being overruled, was repeated at the conclusion of all the testimony. After the verdict, a motion for judgment notwithstanding the verdict was made and overruled. Judgment was entered upon the verdict, and the defendant appeals.

The facts out of which the litigation arose are these: Sometime during the year 1917, the Washington Motion Picture Company, a corporation, leased from the city of Spokane Minnehaha Park, which is in the suburbs of the city. The park consisted of a considerable tract of ground. After leasing it, the motion picture company remodeled certain buildings upon the property and erected others, thereby creating a plant for the taking of motion pictures. About the first of June, 1918, one Cooper, who was not then in the employ of the company, brought to the ground three grown dogs and five pups. These dogs are referred to as Alaska Husky Wolf Dogs. For about two weeks after being brought there, the dogs were kept at the garage. Cooper, the owner, was subsequently employed by the motion picture corporation in some capacity. The dogs were never used by the motion picture company in any way. After they had been at the garage for approximately two weeks, they were ordered away from there, and the owner placed them in a pen in one corner of the grounds, which was some distance from the nearest building used by the motion picture corporation. The pen in which the dogs were placed was formed by a rock cliff at that place and a men's abandoned toilet, which apparently had been

used when the ground was used for park purposes. The rock wall and the toilet were connected by a tight board fence about eight feet high.

On August 27, 1918, Fred K. McBroom was appointed receiver for the motion picture corporation, and immediately took possession of its assets. Prior to the time he took possession, there had been employed on the ground as a gardner and watchman one W. R. Willey. After the receiver was appointed, he continued the employment of Willey as a watchman for the purpose of keeping people not having business there off of the ground. After the dogs were removed to the pen above referred to, Willey was employed by the owner to feed them. About the middle of September, 1918, one of the large dogs killed two of the pups. Willey, on discovering this, removed the dog from the pen and chained him on the outside to the fence. This was on Thursday or Friday of a certain week. The dog, within a day or so after he was chained, broke his chain and left the grounds. Willey searched for him, but did not locate him. On the following Monday, or the 23d of September, he appeared upon the premises of a neighbor of the respondent's, where the latter's little boy was playing, attacked the boy and severely bit him on the back and top of the head. Subsequently the boy died as the result of this attack.

This action is not brought against the owner of the dog, but as above stated, against the appellant as receiver for the motion picture company. There is evidence that the officers of the motion picture company, or some of them, knew that the dogs were on the grounds, at the time they were at the garage, but it does not show that the officers of the company knew the dogs were being kept in the pen at what is referred to as the men's old toilet. This toilet had at no time been used by the motion picture company. The

receiver did not know that Willey, the watchman, was feeding the dogs for the owner, and did not know that the dogs were on the premises. In fact, the evidence fails to show that he had any knowledge of the dogs whatever prior to the time of the accident and the bringing of this suit. Willey, in taking care of the dogs for the owner thereof, was acting outside of the scope of his employment as a watchman.

At common law a person would not be liable for an injury resulting from the bite of a dog unless he was the owner, keeper, or harborer of the dog. *Decker v. Gammon*, 44 Me. 322, 69 Am. Dec. 99; *McClain v. Lewiston Interstate Fair & Racing Assn.*, 17 Idaho, 63. The question then arises whether the receiver was the owner, keeper or harborer of the dog that bit the respondent's son. That he was not the owner or keeper is obvious. But the question whether there are facts which would sustain a finding that the receiver was the harborer of the dogs requires further considera- tion.

In 2 Words and Phrases (2d ed.), page 820, har- boring is defined as follows: " 'Harboring' means protecting, and one who treats a dog as living at his house and undertakes to control his actions is the owner or harborer thereof, as affecting liability for injuries caused by it." There are no facts or infer- ence from facts to sustain a conclusion that the re- ceiver was the harborer of the dogs. They were not a part of the assets of the motion picture corporation. They did not come into the possession of the receiver, and he had no knowledge of their existence, or that they were being kept upon the ground which was cov- ered by the lease to the motion picture company. It is true that the receiver, after being appointed, was frequently upon the ground and about the buildings which were the assets of the corporation of which he

was receiver. This was not sufficient to charge him with knowledge that the dogs were being kept at a men's abandoned toilet which was not a part of the assets of the receivership, and where he had no occasion to go in looking after and assembling the property for which he was receiver. The evidence is that one upon the grounds would not know that the dogs were there unless he approached the place where they were kept and looked through the tight board fence.

The statute relied on by the respondent, Laws of 1917, page 722, defines the duties of the "owner and keeper" of dogs. Since there was no evidence which would sustain a finding that the receiver was the owner, keeper or harborer of the dog, liability did not arise by reason of the statute. The same is true of the ordinance of the city of Spokane relied on. That ordinance refers to every person who, being the owner or having the care, custody and control of a dog. The receiver not being the owner, keeper or harborer of the dog, there are no facts which would bring him within the ordinance. The dogs were not in the possession or control of the receiver. Willey's keeping the dogs was outside of the scope of his employment with the receiver, and what he did with reference thereto could not be imputed to his employer.

The respondent cites a line of cases which hold that the receiver who takes over a railroad and operates it is liable in his official capacity for defects in machinery or road bed which he used in the operation of the property, even though such defects existed at the time of his appointment. But this rule can have no application to the facts in this case. Even though it be assumed that the officers of the corporation, prior to the appointment of the receiver, knew that Cooper was having his dogs kept in a pen at the abandoned toilet, this knowledge could not be imputed to the receiver.

Had the latter known that the dogs were being kept there and acquiesced in such keeping, a different question would be presented, upon which no opinion is here expressed. The railroad cases referred to are decided on the theory that the receiver operating the road had a continuing duty to keep it in repair. We are quite unable to see any theory upon which the verdict and judgment in this case can be sustained without facts, or justifiable inference from facts, which would show that the receiver was the harborer, keeper or had control of the dogs. This question being at the very threshold of the appeal, and being decisive thereof, it is not necessary to discuss or determine any other question presented in the briefs.

The judgment will be reversed, and the cause remanded with directions to the superior court to dismiss the action.

HOLCOMB, C. J., PARKER, TOLMAN, and MITCHELL, JJ., concur.