

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CALEB J. JONES, an individual, | ) | |
| | ) | No. 38541-8-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEBORAH A. HOWE, an individual; and | ) | UNPUBLISHED OPINION |
| WILLIAM LEBER, an individual, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, C.J. — Caleb Jones appeals the vacating of a default order and

judgment he obtained against defendant William Leber in January 2014.  He contends the

trial court abused its discretion in finding that Mr. Leber demonstrated a prima facie

defense to his claim and in finding that Mr. Leber's failure to timely appear and respond

was excusable.  He also contends the trial court misapplied the equitable factors of

whether Mr. Leber acted with due diligence after notice of the default judgment and

whether Mr. Jones would suffer a substantial hardship if the judgment was vacated.

We find no abuse of discretion and affirm.

FACTS AND PROCEDURAL BACKGROUND

In September 2020, William Leber received a certified letter from a law firm that

informed him the firm had applied for a writ of garnishment of his assets.  The

application for a writ of garnishment was based on a judgment evidently taken against

Mr. Leber six and a half years earlier, in January 2014, in the principal amount of

$155,670.50. The law firm, on behalf of plaintiff Caleb Jones, sought to garnish that

amount plus interest, attorney fees and costs. Mr. Leber, who claims to have previously

been unaware of any lawsuit, promptly retained a lawyer.

Caleb Jones's 2014 lawsuit, which named Deborah Howe and William Leber as

defendants, was for damages sustained by Mr. Jones from a dog bite. The complaint

alleged that Mr. Jones sustained the damages in October 2011 when he went to pet a dog

that was on a leash being held by Ms. Howe. The dog bit his face, causing severe

lacerations of his nose and lip. The complaint did not allege that Mr. Leber was present

when this happened but averred, based on "reason to believe," that the dog was "kept,

harbored, owned and/or resided" with Mr. Leber as well as Ms. Howe. Clerk's Papers

(CP) at 1.

Mr. Leber moved to vacate the default order and judgment within a matter of

weeks of learning of the intent to garnish. He contended he had never been served with a

summons and complaint in the lawsuit, and the trial court had a nondiscretionary duty to

vacate a void judgment. He also sought relief under CR 55(a) and 60(b)(1) on the basis

of the irregularity in purported service and because he had a prima facie defense: that the

offending dog—Mack, a bullmastiff—was owned by Ms. Howe, not him.

Mr. Jones's service of process documentation stated that a process server identified as "A. Hunter" had traveled in the early evening of January 29, 2013, to Mr. Leber's Gig Harbor address with a view to serving both Ms. Howe and Mr. Leber. An invoice revealed that Mr. Hunter had been unable to serve Ms. Howe, having been informed by "GEORGE, REFUSED LAST NAME, NEXT DOOR NEIGHBOR," that Ms. Howe had moved and "Returned to Alaska?" CP at 29. The invoice indicated that Mr. Hunter's unsuccessful attempt to serve Ms. Howe had occurred at 6:26 p.m.

Mr. Hunter's declaration of service on Mr. Leber stated that service was accomplished on Mr. Leber within moments thereafter, at 6:35 p.m. A service note on one of the declarations of service on Mr. Leber stated that "[s]ubject vehemently denied responsibility for claim, refused to accept papers. Dropped papers in driveway in his presence." CP at 24.

Mr. Hunter's declarations of his January 29, 2013 unsuccessful attempt at service on Ms. Howe at 6:26 p.m. and his alleged successful service on Mr. Leber nine minutes later included almost identical and quite imprecise physical descriptions of next-door neighbor "George" and Mr. Leber. Both were described as being brown-haired white males, 5'8" to 6'0" tall and weighing 180 to 220 pounds. *Compare* CP at 24, 29. The only difference is that Mr. Hunter described George as 35 to 45 years of age, while Mr. Leber was described as being 45 to 55 years of age. *Id.*

3

By the time the motion to vacate the default order and judgment were heard, Mr. Leber had filed additional declarations in support of the motion to vacate. Mr. Leber stated in a supplemental declaration that the time he was allegedly served by Mr. Hunter ("6:35 p.m. on Tuesday, January 29") would have been impossible given his "work and social schedule at the time," which kept him out of the house until after 8:00 or 9:00 p.m. on weekdays. CP at 172. With respect to his alleged ownership of the dog that bit Mr. Jones, Mr. Leber testified:

> I was in a romantic relationship with Defendant Deborah Howe from May 2006 to August 2012. Prior to the start of our relationship, Ms. Howe owned a dog that was a golden retriever mix. Around 2009, the dog died, and Ms. Howe purchased a bullmastiff named Mack, which is the dog that is the subject of this litigation. Ms. Howe paid for Mack with her own money. Mack was Ms. Howe's dog, not mine. When our relationship ended in August 2012, Ms. Howe moved out of the residence and took her dog, Mack, with her. I have not seen Ms. Howe or Mack since they moved out in August 2012.

*Id.*

Mr. Leber had also obtained a declaration from his former next-door neighbor, George Ewing, which cast doubt on Mr. Hunter's claim to have serendipitously run into and served Mr. Leber nine minutes after finding no one at the Leber home and having learned from Mr. Ewing that Ms. Howe had moved. Mr. Ewing stated in his declaration that until being contacted about this lawsuit, he had not spoken with Mr. Leber since some time before February 2013. Mr. Ewing described himself as "providing this Declaration as a neutral party." CP at 182.

4

At oral argument of the motion to set aside the default, Mr. Leber's counsel characterized the evidence from Mr. Ewing as establishing that "[a]t best" Mr. Hunter was "mistak[en]" that he effected service on Mr. Leber, and "[a]t worst" he had committed perjury. Report of Proceedings (RP) at 3.

Mr. Ewing's declaration stated that he had reviewed Mr. Hunter's declaration of attempted service on Ms. Howe and believed Mr. Hunter's reference to "George" was a reference to him, stating, "I have a specific recollection of my interaction with a process server on that date." CP at 182. Mr. Ewing testified that on January 29, 2013:

> At approximately 6:30 p.m., Mr. Hunter parked in Mr. Leber's driveway and walked across the driveway to my residence. Mr. Hunter knocked on my door. After I answered the door, Mr. Hunter asked me whether I knew who lived next door. I replied that I could not remember his name at the moment but that "they were busy people and were not home very often." Mr. Hunter then told me that he had papers to serve but that nobody was at Mr. Leber's residence. At that point, I exited my house and walked to the end of my walkway, where I could see the other house. I distinctly remember that no one was home at Mr. Leber's residence. Mr. Hunter then held the papers out to me and asked me to take them for Mr. Leber. I refused and told Mr. Hunter to, "give them to him yourself." At that point, Mr. Hunter got upset and demanded to know my name. I told Mr. Hunter that my name was George, and I refused to provide him my last name, as at this point, I thought that Mr. Hunter was trying to serve me. I told Mr. Hunter my address, advised him that the address on the paperwork was not my address, and I went back inside my house. I did not take the paperwork from him, nor did I throw them on my driveway.
>
> . . . In Exhibits B and C, Mr. Hunter describes both Mr. Leber and me, as "a brown-haired white male . . . 5'8" – 6'0" tall and weighing 180 – 220 pounds." This does not describe my physical appearance, and Mr. Leber and I are not similar in physical appearance. At the outset, I am 5'4" tall

while Mr. Leber is 6'0". Additionally, I am—and at all relevant times have been—mostly bald.

CP at 182-83.

At the hearing on Mr. Leber's motion to vacate, Mr. Jones challenged the sufficiency of Mr. Ewing's declaration, which was not physically signed. Mr. Ewing stated in the declaration that he was then in Japan and did not have access to a printer, so he had "electronically signed" the declaration; the signature line read, "*s/ George Ewing [via email on 12/26/20 ]*." CP at 181. Mr. Jones otherwise relied on the following arguments: that Mr. Leber failed to adequately demonstrate a defense to the claim or that his failure to appear was excusable, that Mr. Leber had not demonstrated due diligence, and that vacating the judgment would cause a substantial hardship to Mr. Jones, as "[m]emories have faded, scars have healed, witnesses have become unavailable, and other obstacles would be presented in seeking damages." CP at 125.

After hearing argument, the trial court granted the motion subject to Mr. Leber filing a legally sufficient version of the Ewing declaration. A signed declaration was filed shortly thereafter and an order vacating the default order and judgment against Mr. Leber was entered. Mr. Jones appeals.

## ANALYSIS

For good cause shown and upon such terms as the court deems just, a trial court may set aside an entry of default and, if a judgment by default has been entered, may

6

likewise set it aside in accordance with rule 60(b). CR 55(c). A party moving to vacate a

default judgment under CR 60(b)(1), the provision with which we are concerned,[1] must

be prepared to show (1) that there is substantial evidence supporting a prima facie

defense; (2) that the failure to timely appear and answer was due to mistake,

inadvertence, surprise, or excusable neglect; (3) that the defendant acted with due

diligence after notice of the default judgment; and (4) that the plaintiff will not suffer a

substantial hardship if the default judgment is vacated. *White v. Holm*, 73 Wn.2d 348,

352, 438 P.2d 581 (1968).

This is not a mechanical test; whether or not a default judgment should be set

aside is a matter of equity. *Id.* at 351. Factors (1) and (2) are primary; factors (3) and (4)

---

[1] Mr. Leber also relied on CR 60(b)(5), but his lawyer commented during oral argument that in all of the cases she had reviewed applying the *White* factors, the fact that process had been served was not disputed. RP at 6-7. She proceeded to argue that where the defendant could demonstrate a prima facie defense, the failure to effect service was nevertheless a basis for vacating the judgment under CR 60(b)(1).

We agree that an apparent failure to effect service of process is an "irregularity" within the meaning of CR 60(b)(1) and a basis for vacating a default judgment if the defendant presents a prima facie defense. Where (as here) an action would be time barred if service was void, there is conflicting evidence whether the defendant was properly served, and there is a prima facie defense that is disputed, it is understandable that both sides might prefer to proceed on affidavits under CR 60(b)(1) rather than request an evidentiary hearing under CR 60(b)(5), with its more draconian consequences. *Cf. In re Custody of K.R.H.*, No. 32597-1-III (Wash. Ct. App. Jan. 12, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/325971.unp.pdf (where petitioner could have requested an evidentiary hearing with oral testimony on the issue of service but chose instead to argue he was the more credible witness on the affidavits, this court, applying RAP 2.5(a), refused to entertain a request for remand for an evidentiary hearing.).

are secondary. *Id.* at 352-53. "In a proceeding to vacate or set aside a default judgment, the trial court 'should exercise its authority "liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done."'" *Little v. King*, 160 Wn.2d 696, 709, 161 P.3d 345 (2007) (quoting *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979) (quoting *White*, 73 Wn.2d at 351)). Any doubts should be resolved in favor of allowing a trial on the merits. *Id.* Accordingly, an abuse of discretion is less likely to be found if the trial court sets aside a default judgment than if it denies a trial on the merits. *Id.* at 710 (citing *Griggs*, 92 Wn.2d at 582; *White*, 73 Wn.2d at 351-52). An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court. *Id.* (citing *Cox v. Spangler*, 141 Wn.2d 431, 439, 5 P.3d 1265 (2000)).

Mr. Jones makes three assignments of error that we address in turn.

I.    CONTRARY TO MR. JONES'S ARGUMENT, MR. LEBER DOES NOT RELY SOLELY ON THE FIRST *WHITE* FACTOR, AND HIS EVIDENCE, VIEWED IN THE LIGHT MOST FAVORABLE TO HIM, ADEQUATELY DEMONSTRATES A PRIMA FACIE DEFENSE

Mr. Jones's first assignment of error is that the trial court abused its discretion in finding that Mr. Leber adequately demonstrated the first *White* factor: that substantial evidence supported a prima facie defense.

When determining a motion to vacate, the trial court evaluates whether the moving party has adequately established substantial evidence of a prima facie defense. *Pfaff v. State Farm Mut. Auto. Ins. Co.*, 103 Wn. App. 829, 834, 14 P.3d 837 (2000). To meet

8

this burden, a moving party need present only *some* defense. *Id.* In considering the evidence provided by the parties, a trial court must review the evidence in light most favorable to the moving party. *Id.*; *see also Gutz v. Johnson*, 128 Wn. App. 901, 917, 117 P.3d 390 (2005), *aff'd*, *Morin v. Burris*, 160 Wn.2d 745, 161 P.3d 956 (2007).

At common law, a person is not liable for an injury resulting from the bite of a dog unless he was the "owner, keeper, or harborer" of the dog. *Markwood v. McBroom*, 110 Wash. 208, 211, 188 P. 521 (1920). "'Harboring' means protecting, and one who treats a dog as living at his house, and undertakes to control his actions, is the owner or harborer thereof, as affecting liability for injuries caused by it." *Id.* (quoting 2 WORDS AND PHRASES 820 (2d ser. 1914)). Mr. Jones's complaint alleged, but he provided no evidence, that Mr. Leber was an "owner, keeper and harborer" of Mack when Mack bit him.

In support of his motion to vacate the default judgment, Mr. Leber testified by declaration;

> The dog related to this incident was not mine. It was Deborah Howe's. I have never stated that the dog was mine. I was never married to Ms. Howe, and her dog was never mine, [and] I was nowhere near . . . where Plaintiff was bitten.

CP at 79. He argued that "[t]his case appears to have been filed against Defendant Leber based solely on the fact that Defendant Howe lived in Defendant Leber's house with her dog." CP at 87.

9

Mr. Jones complains that Mr. Leber's response amounts to only a conclusory denial of liability, without supporting facts. Yet as the trial court pointed out, Mr. Leber swore in a supplemental declaration that Ms. Howe had purchased Mack, paying for him with her own money, and that when the parties' relationship ended in August 2012, Ms. Howe moved out and took Mack with her. Mr. Leber testified that he had not seen Ms. Howe or Mack since they moved out in August 2012.

While Mr. Leber's evidence directly refutes only his *ownership* of Mack, Mr. Jones never identified evidence supporting a claim that Mr. Leber "harbored" Mack in the sense of undertaking to control his actions. Mr. Leber was not required to respond with evidence to a conclusory "harboring" allegation, the basis for which was never identified.

Mr. Jones cites *VanderStoep v. Guthrie*, 200 Wn. App. 507, 518, 402 P.2d 833 (2017), for the proposition that to prevail on a motion to vacate a default judgment that is based entirely on the existence of a prima facie defense, the defendant has the burden to establish a "strong or virtually conclusive defense." He argues that Mr. Leber provided nothing more than "unsupported conclusory statements that [Mr. Leber] is not liable for Mr. Jones's injuries." Br. of Appellant at 9.

The trial court's decision to vacate the default order and judgment was not based entirely on the first *White* factor. The court's order does not say that it was. At the hearing, Mr. Leber contended that all four *White* factors were demonstrated. The trial

10

court showed interest in all four through its questions. In announcing its decision, the trial court discussed both Mr. Leber's prima facie defense and the evidence that Mr. Leber was not served nor did he have notice of the lawsuit before September 2020. The court stated that it would grant the motion not for any single reason, but given "the rather unique fact pattern in this case." RP at 16.

This is not a case where reliance was placed entirely on the first *White* factor. Mr. Leber presented evidence and argument in support of all four factors. No abuse of discretion is shown.

II.      THE EVIDENCE SUPPORTS A FINDING THAT MR. LEBER'S FAILURE TO TIMELY APPEAR AND ANSWER WAS DUE TO AN IRREGULARITY IN OBTAINING THE JUDGMENT

Mr. Jones's second assignment of error is to the sufficiency of Mr. Leber's evidence of the second *White* factor: that the failure to appear was due to mistake, inadvertence, surprise, or excusable neglect. "[I]rregularity in obtaining a judgment" is also a basis for relief under CR 60(b)(1), and irregularities that can be considered on a motion to vacate a judgment are those relating to want of adherence to some prescribed rule or mode of proceeding. *In re Guardianship of Adamec*, 100 Wn.2d 166, 174, 667 P.2d 1085 (1983) (citing *State v. Price*, 59 Wn.2d 788, 791, 370 P.2d 979 (1962)).

Whether a defendant's failure to timely appear is excusable is determined on a case-by-case basis. *Akhavuz v. Moody*, 178 Wn. App. 526, 534-35, 315 P.3d 572 (2013). Unlike the first *White* factor, a trial court does not view evidence of excusable neglect in

light most favorable to the defendant. *Rosander v. Nightrunners Transp., Ltd*., 147 Wn.

App. 392, 406, 196 P.3d 711 (2008). As explained in *Rosander*:

> The law requires that trial courts review prima facie defenses in the light most favorable to the defendant because "vacating a default judgment would be pointless [if] a subsequent trial would simply result in another judgment in favor of the plaintiff." 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 9.26, at 264 (2003). If a jury could find for the defendant, trial would not be pointless. But this rationale does not extend to whether the defendant's neglect of the case was excusable.

*Id.* (alteration in original) (citing *Johnson v. Cash Store*, 116 Wn. App. 833, 847-49,

68 P.3d 1099 (2003) (upholding trial court's holding that neglect was inexcusable based

on credibility determination and weight of evidence)). The trial court has broad

discretion over the issue of excusable neglect and may weigh evidence and make

credibility determinations in order to determine the issue. *Id.*

Mr. Jones mischaracterizes or at least misapprehends the findings the trial court

drew from the consistencies and inconsistencies between Mr. Hunter's declarations and

those of Mr. Ewing. Fairly read, the trial court perceived Mr. Hunter's testimony that he

spoke with Mr. Ewing as confirming that Mr. Ewing was present at the critical time. The

trial court evidently viewed Mr. Ewing as a neutral, more reliable reporter than Mr.

Hunter. The trial court described Mr. Ewing as able to testify to "significant things in the

declaration . . . about what happened or didn't happen on that day." RP at 15.

The trial court did not abuse its discretion in attaching more weight to Mr.

Ewing's testimony than to Mr. Hunter's apparent position that unbeknownst to Mr.

Ewing, Mr. Leber appeared and was served within minutes after Mr. Ewing refused to

accept service of the papers for Mr. Leber. *Compare* CP at 182-83 *and* CP at 22. Nor

did the trial court abuse its discretion in granting the motion contingent upon Mr. Leber

obtaining a signed version of Mr. Ewing's declaration.

III.     THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ITS CONSIDERATION OF THE THIRD AND FOURTH *WHITE* FACTORS

Finally, Mr. Jones argues that the trial court abused its discretion by allegedly

placing the burden on Mr. Jones to show that *he* acted with due diligence and focused on

the unique hardship to *Mr. Leber* should the motion to vacate be denied. He argues that

the trial court's view turned the third and fourth *White* factors on their head.

During Mr. Jones's argument of the motion to vacate, the trial court inquired of his

counsel:

> [P]art of your response was indicating about issues about the difficulties
> your client would face in now trying this case with—so many years later
> and things of that nature, but when I read that, my concern about that
> statement was it seems to me isn't that caused by the fact that there was no
> effort to collect on this debt for, whatever it was, six years, seven years? I
> mean,—that seems to have been something that your client created as far as
> any lag in time.

RP at 12-13. Mr. Jones's counsel responded by representing to the court that delay in

collecting occurred because there had been a transfer of property, requiring the law firm

to engage a company better equipped to pursue collection.

13

No. 38541-8-III
*Jones v. Howe, et al.*

Mr. Leber agreed with the trial court that avoidance of the delay was in Mr. Jones's control, but that was not the basis on which Mr. Leber argued the third or fourth *White* factors. Mr. Leber relied first and foremost on a lack of prejudice to Mr. Jones, identifying several reasons. He pointed out that Mr. Jones still had his judgment against Ms. Howe, who had moved to Alaska before the lawsuit was filed, so that was not a hardship that could be attributed to Mr. Leber. He pointed out that Mr. Jones had not identified any information needed from Mr. Ewing, but in any event, Mr. Ewing's declaration stated he would return to the United States in March 2021. He pointed out that Mr. Leber remained available, as were Mr. Jones's medical and billing records.

Here, too, no abuse of discretion is shown.

The order vacating the default order and judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Lawrence-Berrey, J.

Pennell, J.

14